W. William Wilt, Plaintiff *v.* Frank S. Beal, Secretary of Public Welfare and Grace M. Sloan, Treasurer, Defendants.

Argued June 9, 1976, before President Judge Bowman and Judges CRUMLISH, JR., WILKINSON, JR., MENCER and BLATT. Judges KRAMER and ROGERS did not participate.

*Edward C. Hussie,* for plaintiff.

*J. Justin Blewitt, Jr.,* Deputy Attorney General, with him *David Max Baer,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for defendants.

OPINION BY JUDGE MENCER, August 26, 1976:
Plaintiff, W. William Wilt, is a member of the House of Representatives of the Commonwealth of Pennsylvania, who seeks to enjoin Frank S. Beal, the Secretary of Public Welfare, and Grace M. Sloan, the State Treasurer, (defendants) from taking steps to use and operate the recently completed but as yet unused Altoona Geriatric Center (Center) as a mental-health-care facility. Wilt has also requested that defendant Beal be required to reimburse the treasury for any monies expended in the allegedly improper operation of the Center.

In his original complaint, Wilt alleged only his standing to sue as a taxpayer of the Commonwealth. Wilt's counsel was at that time, and remains, the chief counsel to the House minority leader. Defendants responded with a motion for disqualification of plaintiff's counsel, on the ground that it was improper for counsel on the payroll of the legislature to represent an individual taxpayer. Defendants also filed preliminary objections, including a demurrer and chal-

lenges to Wilt's standing to sue and to the jurisdiction of this Court.

After a hearing before Judge WILKINSON, Wilt was granted leave to file an amended complaint asserting, in addition to his status as a taxpayer, his standing as a legislator. The preliminary objections were stayed pending that amendment. Wilt having duly amended his complaint, the preliminary objections and the outstanding motion to disqualify counsel are now properly before us. Since the propriety of Wilt's being represented by counsel to the House minority leader is so closely related to his standing to sue in his legislative capacity, we must first address ourselves to that difficult issue.

Scholars and judges alike have been troubled by this complicated and illusive concept of standing. Certain well-defined general principles have, however, emerged. The earlier strict requirements of pecuniary interest or a special and direct injury[1] have been greatly eased. Thus, a taxpayer's standing to challenge a wrongful expenditure of tax monies has been assumed. *Mayer v. Hemphill,* 411 Pa. 1, 190 A.2d 444 (1963). A taxpayer's challenge to the removal of property from the tax rolls has also been allowed on the ground that this was equivalent to an expenditure. *Price v. Philadelphia Parking Authority,* 422 Pa. 317, 221 A.2d 138 (1966). However, the cases do not dispense with the necessity to establish some nexus between the complainants in a given case and the challenged expenditure. *Faden v. Philadelphia Housing Authority,* 424 Pa. 273, 227 A.2d 619 (1967).

The Pennsylvania Supreme Court, in *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975), recently held that standing requires a direct, substantial interest in the claim ad-

---

[1] *See Loewen v. Shapiro,* 389 Pa. 610, 133 A.2d 525 (1957).

vanced. The requirement of a direct interest means that the person claiming to be aggrieved must show causation of harm to his interest by the matter of which he complains. While the requirement of a "substantial" interest "simply means that the individual's interest must have substance—there must be some discernible adverse effect to some interest other than the abstract intrest of all citizens in having others comply with the law." ⸺ Pa. at ⸺, 346 A.2d at 282.

The application of these general principles of standing to the case of a legislator seeking to vindicate an interest peculiar to his status as a member of the legislature creates, we believe, a case of first impression in the Commonwealth. In two previous cases brought by members of the legislature in their official capacities, it was assumed without extended discussion that the plaintiffs had standing. These cases, *Frame v. Sutherland*, 459 Pa. 177, 327 A.2d 623 (1974), and *Stroup v. Kapleau*, 455 Pa. 171, 313 A.2d 237 (1973), challenged, by actions in quo warranto,[2] gubernatorial appointments allegedly made in violation of Article IV, Section 8,[3] of the Pennsylvania Constitution.

The basis for the Court's granting standing to the legislators in *Frame* and *Stroup* rested on the nature of an action in quo warranto, which generally grants standing to a broad group to challenge the right of an officeholder to his office.[4] However, in the case at

___

[2] Now included in the scope of a "petition for review." Pa. R.A.P. 1502.

[3] Article IV, Section 8, at that time required the consent of two-thirds of the members of the Senate to confirm certain appointments.

[4] At least two commentators have noted the historical availability of quo warranto even to a stranger to the matter at issue. Berger, *Standing to Sue in Public Actions—Is It a Constitutional Requirement?* 78 Yale L.J. 816, 823 (1969) ; Jaffe, *Standing to Secure Judicial Review: Public Actions*, 74 Harv. L. Rev. 1265, 1269 (1961).

bar, plaintiff Wilt is not challenging the right of defendants to office. Instead, he seeks to enjoin actions proceeding from an administrative determination by the Secretary of Welfare. The *Frame* and *Stroup* cases therefore provide little guidance for us in this matter.

In recent years, the federal courts have had many occasions to consider the question of a legislator's standing to sue. While these cases are not binding on us, they can provide some help in this difficult area. We are mindful, however, of Professor Berger's Miltonic warning that "[c]onfusion twice-confounded reigns in the area of federal jurisdiction described as 'standing to sue' ".[5]

In *Flast v. Cohen,* 392 U.S. 83 (1968), the Supreme Court established a two-part test for determining whether a taxpayer would be granted standing to challenge a governmental enactment. The Court stated:

"The nexus demanded of federal taxpayers has two aspects to it. First, the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. . . . Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged." 392 U.S. at 102.

In announcing this test, the Court sought to insure that the litigants would have a personal stake in the outcome of the controversy.[6] A related standard was announced in *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150 (1970), for those seeking review of administrative actions. The Supreme Court reiterated the "personal stake" requirement announced earlier and also required that the plaintiff be "arguably within the zone of interests

---

[5] Berger, *supra* note 4, at 816.

[6] *Baker v. Carr,* 369 U.S. 186, 204 (1962).

to be protected or regulated by the statute or constitutional guarantee in question". 397 U.S. at 153. Both standards have been considered to require the same degree of relationship among the plaintiff, the injury, and some protectible interest of the plaintiff.[7] Federal courts, considering legislators' standing, have applied the tests sometimes interchangeably.[8]

In *Sierra Club v. Morton,* 405 U.S. 727 (1972), a leading case testing the limits of the federal concept of standing, the Supreme Court, in denying standing to an environmental group challenging an administrative action, announced the rationale for requiring adherence to the tests in *Baker* and *Flast.* Requiring standing, it said, will "serve as at least a rough attempt to put the decision as to whether review will be sought in the hands of those who have a direct stake in the outcome". 405 U.S. at 740. The relaxation of the federal requirement of standing begun in *Flast* has not, however, dispensed with the requirement altogether. Indeed, in *Schlesinger v. Reservists Committee to Stop the War, supra* note 8, the Court reaffirmed its position on standing:

"[W]e have more recently stressed that the broadening of *categories* 'is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury.' Sierra Club v. Morton, 405 U.S. 727, 738, 31 L.Ed 2d 636, 92 S.Ct. 1361 (1972). And, in defining the nature of that injury, we have only recently stated flatly: 'Abstract injury is not enough.' O'Shea v. Littleton, 414 U.S. 488, 494, 38 L. Ed. 2d 674, 94 S. Ct. 669 (1974)." 418 U.S. at 218-19 (emphasis in original).

---

[7] *See, e.g.,* Comment, *Congressional Standing to Challenge Executive Action,* 122 U. Pa. L. Rev. 1366 (1974).

[8] *But see Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 227 n. 16 (1974).

The tests announced in these cases are, we believe, sound and in general agreement with the principles of standing as stated in the cases decided in this Commonwealth.[9] We therefore may look to the way in which these tests have been applied to the question of whether a legislator has standing to raise certain issues before the federal courts solely in his or her capacity as a legislator. In *Coleman v. Miller,* 307 U.S. 433 (1939), the standing of state senators to challenge an illegal tie-breaking vote cast by the lieutenant governor was upheld. The Court ruled that the senators had a "plain, direct and adequate interest in maintaining the effectiveness of their votes." 307 U.S. at 438. Notwithstanding this broad language, it is clear that what was at stake was whether the senators' votes on the ratification of an amendment to the U. S. Constitution would be properly counted. A review of more recent cases shows that standing has been granted to U. S. Representatives to challenge the conduct of the war in Vietnam on the ground that if the war were declared illegal it would bear upon congressional duties to consider impeachment and to make appropriations with regard to the cessation of hostilities,[10] *Mitchell v. Laird,* 488 F.2d 611 (D.C. Cir. 1973), and to congressmen to challenge the firing of Archibold Cox as special prosecutor, using similar reasoning. *Nader v. Bork,* 366 F. Supp. 104 (D.D.C. 1973).

In *Kennedy v. Sampson,* 511 F. 2d 430 (D.C. Cir. 1974), the court found that an individual senator had standing to challenge an allegedly illegal "pocket

---

[9] *See, e.g., William Penn Parking Garage, Inc. v. City of Pittsburgh, supra.*

[10] This rationale was rejected, however, in *Holtzman v. Schlesinger,* 484 F.2d 1307 (2nd Cir. 1973), *cert. denied,* 416 U.S. 936 (1974).

veto''[11] on the ground that he was being denied his right to vote for an attempted override of the veto. The *Kennedy* court found that ''legislative power'' under the separation-of-powers doctrine was at stake, thus affording the Senator an injury in his official capacity sufficient to support standing.

However, a legislator has been denied standing to contest actions which he claimed impaired the effectiveness of legislation for which he voted and on which his vote was duly counted. *Metcalf v. National Petroleum Council,* 407 F. Supp. 257 (D.D.C. 1976). The plaintiff's claim in that case is analogous to Wilt's claim in the case at bar. Similarly, several congressmen were denied standing to protest an issue which could be brought to a vote in the legislature. *Public Citizen v. Sampson,* 379 F. Supp. 662 (D.D.C. 1974), *aff'd,* 515 F.2d 1018 (D.C. Cir. 1975).

What emerges from this review of the federal cases is the principle that legislators, as legislators, are granted standing to challenge executive actions when specific powers unique to their functions under the Constitution are diminished or interfered with. Once, however, votes which they are entitled to make have been cast and duly counted, their interest as legislators ceases. Some other nexus must then be found to challenge the allegedly unlawful action. We find this distinction to be sound for it is clear that certain additional duties are placed upon members of the legislative branch which find no counterpart in the duties placed upon the citizens the legislators represent.[12] These duties have their origin in the Constitution and in that sense create constitutional powers to enforce those duties. Such powers are in addition to what we normally speak of as the con-

---

[11] Under U.S. Const. Art. I, §7.

[12] *See, e.g., Nader v. Bork, supra.*

stitutional rights enjoyed by all citizens. To give but one familiar example, under the Pennsylvania Constitution, members of the Senate have the duty to approve or disapprove certain appointments made by the Governor.[13] Interference with the performance of this duty would be an injury to members of the Senate sufficient to give each senator standing to protect the injury to his or her "constitutional right" to vote for or against confirmation of an executive appointee.[14]

Applying this reasoning to the case at hand, we find no connection between Wilt's status as a legislator and any constitutional provision alleged to have been breached by the defendants' actions. Wilt complains that the purpose of the bill for which he had voted has been frustrated, thus depriving him of the effectiveness of his vote. However, once Wilt's vote had been duly counted and the bill signed into law, his connection with the transaction *as a legislator* was at an end. Therefore, he retains no personal stake, as required by *William Penn, supra,* in the outcome of his vote which is different from the stake each citizen has in seeing the law observed. He therefore has no standing to sue in his capacity as a legislator.

Having decided this question, we must now turn to the question of whether chief counsel to the House minority leader should be disqualified from representing, while on the legislative payroll, a person whose only remaining basis for asserting standing is that he is a taxpayer in the Commonwealth. We hold that he should be disqualified. No extended quotations from the Code of Professional Responsibility

---

[13] Pa. Const. Art. IV, §8.

[14] Under this analysis, the plaintiffs in *Frame* and *Stroup* would have standing even without relying on the unique aspects of an action in quo warranto.

are necessary; rather, we find as a matter of policy that it is improper for a taxpayer to have his suit financed by the legislature[15] even when the suit is characterized as being for the public good. Therefore, exercising the court's inherent power to control litigation before it, *Pirillo v. Takiff*, 462 Pa. 511, 341 A.2d 896 (1975); *Slater v. Rimar, Inc.*, 462 Pa. 138, 338 A.2d 584 (1975), we will grant defendants' motion for disqualification of plaintiff's counsel.

We also find that Representative Wilt lacks standing to bring this suit as a taxpayer of the Commonwealth. He has not alleged such a direct substantial interest in the claim advanced as to bring him within the tests announced in *William Penn, supra*. Wilt's complaint fails to satisfy the test that his interest be "immediate" and "not a remote consequence of the judgment." In federal terms, Wilt has failed to show that he is "arguably within the zone of interests to be protected"[16] by Section 331 of the Public Welfare Code[17] on which he bases his claims.

Nor is this a case in which the Court in its discretion should grant standing because "otherwise a large body of governmental action would be unchallengeable in the courts." *Faden, supra*, 424 Pa. at 278, 227 A.2d at 621-22. There are clearly other parties, namely, those meeting the statutory requirements and residing in the area to be served by the Center who would have the requisite interest to challenge the action of the defendants. We note in this regard the observation of Professor Jaffe[18] that "[i]f the interests which the law chooses to protect are satis-

---

[15] No unethical conduct can be imputed to Wilt's counsel or his employers since the outcome of Wilt's claim to standing as a legislator was unknown.

[16] *Data Processing, supra*.

[17] Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §331.

[18] Jaffe, *Standing Again*, 84 Harv. L. Rev. 633, 637 (1971).

308

fied with the status quo though it may involve a legal violation,[19] why should a stranger have the right to insist on enforcement?" (Footnote added.)

The expenditures attacked by Wilt's complaint are only incidental expenditures of tax funds in the administration of an essentially regulatory statute; therefore, the allegations are insufficient to support his standing to sue as a taxpayer. *See Flast, supra* at 102.

Our holdings on the issue of Wilt's standing to' sue make it unnecessary to discuss defendants' other preliminary objections.

ORDER

Now, this 26th day of August, 1976, defendants' motion for disqualification of plaintiff's counsel is granted. Defendants' preliminary objections to plaintiff's amended complaint as they relate to plaintiff's standing to sue are sustained, and plaintiff's amended complaint is hereby dismissed.

---

[19] We have serious doubts that such a violation has occurred in the Secretary's exercise of his discretionary power in this case. *Cf. Hoolick v. Retreat State Hospital*, 24 Pa. Commonwealth Ct. 218, 354 A.2d 609 (1976).