## Johnson v. Monroeville

*Leonard M. Mendelson*, for plaintiffs.
*Robert L. Byer* and *John D. Finnegan*, for defendants.

WETTICK, *J.*, November 29, 1979—On November 21, 1978 the Council of the Municipality of Monroeville enacted an ordinance for the establishment and regulation of cable television. On April 10, 1979 the council voted, by a vote of five to two, to grant a nonexclusive franchise to construct, operate and maintain a cable television system in Monroeville pursuant to the provisions of this ordinance to American Cablevision of Monroeville, Inc. (American). On the following day, American and Monroeville entered into a CATV franchise agreement, and one day later American posted a franchise bond in the amount of $50,000 conditioned upon the faithful performance by American of all terms of the ordinance and franchise agreement.

In the present equity action, plaintiffs request this court to order Monroeville to terminate and revoke the CATV franchise agreement between American and Monroeville and to enjoin American from installing a cable television system in Monroeville. Plaintiffs base their claim for relief on allegations that American made false and perjurious statements relating to the local programming services and facilities provided by an affiliated company in other cities which induced the Council of Monroeville to grant the franchise to American and that a member of council, whose son is an employe of the affiliated company, voted to grant the franchise to American, notwithstanding an obvious conflict of interest.

Plaintiffs in this case are residents and businessmen in Monroeville. They regularly watch television in their homes in Monroeville and plan to subscribe to the cable television service when it is available. In addition, plaintiff Louis Karish owns a restaurant and bar in Monroeville which contains a

number of television sets for the enjoyment of the patrons and intends to subscribe to the cable television service at his place of business when it is available. In their complaint plaintiffs aver that as residents and taxpayers of Monroeville, they will be adversely affected if the franchise agreement between American and Monroeville is permitted to be implemented after having been obtained on the basis of perjury.

Plaintiffs are personal friends of Frank Chiodo, President and Chairman of the Board of Directors of Monroe Cable TV Corporation which was an unsuccessful applicant for the cable television franchise. Following the action of the Council of Monroeville in awarding the franchise to American, plaintiffs offered to assist Mr. Chiodo in any way they could and at Mr. Chiodo's suggestion, they became parties to this legal proceeding. Plaintiffs' complaint was prepared by counsel for Monroe Cable at the direction of Mr. Chiodo; the litigation on plaintiffs' side is being directed by Monroe Cable; plaintiffs have no agreement or understanding with counsel concerning payment of the legal fees and expenses; and plaintiffs have made no payments in connection with this litigation.

The subject of this opinion and order of court is defendants' motions for summary judgment on the grounds that plaintiffs lack standing to bring this action.[1]

---

1. At an argument on a discovery motion, all parties indicated a desire to have the standing issue decided before they engaged in further discovery or filed additional pleadings. Consequently the parties stipulated that defendants could file motions for summary judgment raising the standing issue even though the pleadings have not been closed; that the parties waived objections to consideration and decision of these motions for summary judgment prior to the close of the pleadings;

The Pennsylvania Supreme Court recently considered the requirements necessary to establish standing in the case of Wm. Penn Parking Garage, Inc. v. City of Pittsburgh, 464 Pa. 168, 346 A. 2d 269 (1975). In this case, the court held that one who seeks to challenge a governmental action must show a direct, substantial and immediate interest in this action. The court further held that the interest of a party challenging the governmental action is substantial if the challenged action has "some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law . . .", 464 Pa. at 195, 346 A. 2d at 282, and that the interest is direct if this party shows "causation of the harm to his interest by the matter of which he complains. . . ." Id.

In determining what interests will suffice to confer standing, the court in Wm. Penn Parking Garage, Inc. v. City of Pittsburgh, supra, looked to the recent rulings of the United States Supreme Court which have broadened the concept of standing. Thus, a party challenging a governmental action may have an interest sufficient to confer standing even if the interest is neither pecuniary nor readily translatable into pecuniary terms. See, e.g., Sierra Club v. Morton, 405 U.S. 727, 92 S. Ct. 1361 (1972), in which the United States Supreme Court held that persons who use a national park would have standing to challenge a proposed development that allegedly would lessen the aesthetic and recrea-

_____

that the motions for summary judgment may be decided by this member of the court, sitting alone; and that the parties waived objections to consideration and decision of the motions for summary judgment by a single judge rather than by the court en banc. In addition, for purposes of deciding defendants' motions for summary judgment, the parties agreed to the stipulation of facts.

tional values of the area. Also, while it is insufficient for a person claiming to be aggrieved to assert the common interest of all citizens in procuring obedience to the law, the fact that many persons share the same injuries does not bar from seeking relief any person who has, in fact, suffered an injury. See, e.g., United States v. SCRAP, 412 U.S. 669, 687, 93 S. Ct. 2405 (1973), in which the United States Supreme Court held that an unincorporated association whose members use the forests, streams, mountains and other resources in the Washington area for camping, hiking, fishing, etc., had standing to challenge the legality of a surcharge on freight rates that allegedly had an adverse impact on recycling, thereby affecting adversely the environment, even though "all persons who utilize the scenic resources of the country, and indeed all who breathe its air, could claim harm similar to that alleged by the environmental groups here."

In determining whether a party has standing to challenge a governmental action, the only question is whether that party has, in fact, suffered any injury. As the Pennsylvania Supreme Court said in its Wm. Penn Parking Garage, Inc. v. City of Pittsburgh opinion, 464 Pa. at 203, 346 A. 2d at 286-7:

"This doctrine does not deny relief to one injured by a breach of a public duty simply because many others have suffered a similar injury resulting from that breach. [Citations omitted.] Rather, *the concern is to distinguish those who have suffered some individual injury from those asserting only the common right of the entire public that the law be obeyed.*" (Emphasis supplied.)

Applying these standards to the present case, we must decide only whether plaintiffs have presented any facts showing that they suffered an injury from the alleged unlawful award of the franchise to American. Initially, we consider plaintiffs' claim that they have standing to pursue this action because they are taxpayers of the municipality of Monroeville. Under Pennsylvania law persons have standing to challenge a governmental action as taxpayers only by establishing a nexus between the challenged governmental action and their interests as taxpayers. Thus, in the case of Concerned Taxpayers of Allegheny County v. Com., 33 Pa. Commonwealth Ct. 518, 382 A. 2d 490 (1978), the court ruled that plaintiff lacked standing to challenge the constitutionality of legislation permitting recommendations of the Commonwealth Compensation Commission regarding pay schedules and expense allowances to have the force and effect of law unless rejected by the legislature because plaintiff failed to allege any direct injury to its taxpayer status from the implementation of this legislation. Similarly, in Wilt v. Beal, 26 Pa. Commonwealth Ct. 298, 363 A. 2d 876 (1976), the court held that a state legislator lacked standing as a taxpayer of the Commonwealth to challenge the conversion of a geriatric center to a mental-health-care facility because the challenged governmental action involved only incidental expenditures of tax funds in the administration of an essentially regulatory statute.

In the present case, no public funds will be expended to construct, operate or maintain American's television cable system and the franchise agreement between Monroeville and American requires American to post a bond to protect against the expenditure of public funds in the event of a

breach of the agreement. Thus, plaintiffs lack standing to bring this action as taxpayers because of the absence of any allegations of direct injury to their taxpayer status from the challenged action.[2]

Plaintiffs do not have standing to bring this action as taxpayers because of the possibility that the installation of the cable television system would involve the expenditure of public funds in the event that the installation causes extensive damage to the streets and sidewalks of Monroeville and that the agreement by American, secured by a bond, to indemnify Monroeville against such losses proves to provide inadequate protection. The injury or threat of injury must be both " 'real and immediate,' " not " 'conjectural' " or " 'hypothetical,' " O'Shea v. Littleton, 414 U.S. 488, 494, 94 S. Ct. 669 (1974), and the possibility that the installation of the cable television system will involve the expenditure of public funds is too remote to confer standing. See Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 96 S. Ct. 1917 (1976); Golden v. Zwickler, 394 U.S. 103, 89 S. Ct. 956 (1969); Laird v. Tatum, 408 U.S. 1, 92 S. Ct. 2318 (1972).

Plaintiffs also claim standing on the ground that they are potential subscribers to the cable television service. However, in their pleadings, plaintiffs do not describe any harm that they will suffer as potential subscribers from the illegal award of the franchise to American and no harm is readily apparent. Even assuming that the franchise was ille-

---

2. The cases upon which plaintiffs rely permitting a taxpayer to challenge the award of a public contract to anyone other than the lowest responsible bidder are inapplicable because in those cases, unlike the present case, the award of the contract to anyone other than the lowest bidder will increase public expenditures to the detriment of the taxpayer.

gally awarded to a company that made false statements regarding local programming services and facilities provided by an affiliate in other states, or that one council member voted in American's favor in spite of an obvious conflict of interest, we cannot assume that such illegality will affect detrimentally the quality and content of the programming. The programming standards are contained in the CATV franchise agreement and the ordinance to establish and regulate cable television, and no claim is made that Monroeville cannot and/or will not enforce the agreement or ordinance. Thus, plaintiffs lack standing to bring this action as potential subscribers because of the absence of any allegations that they, as subscribers, will suffer any direct injury from the illegal award of the franchise to American.

The standing doctrine requires that a plaintiff assert an individual interest beyond the interest of all citizens in procuring compliance with the law. Thus, in the case of Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 94 S. Ct. 2962 (1974), the Supreme Court held that citizens and taxpayers organized for the purpose of opposing the Vietnam war lacked standing to challenge the practice of members of Congress of serving in the reserves in possible violation of Art. I, §6, [cl. 2] of the United States Constitution, which provides that no person holding any office under the United States shall be a member of either House. Although plaintiffs alleged that these congressmen may be subject to undue influence by the executive branch and also may not be able faithfully to perform their duties as reservists and members of Congress because of the possibility of inconsistent obligations, the court held that plaintiffs lacked standing to

bring this action because they were unable to show any concrete injury from the alleged illegal conduct. Similarly, in Laird v. Tatum, supra, plaintiffs lacked standing to challenge army surveillance activities even though they claimed that they were the targets of the surveillance, that the purpose of this surveillance was to chill the exercise of their political rights and that the information collected and circulated pursuant to the illegal surveillance activities could jeopardize their employment opportunities. The court held that plaintiffs could not maintain this action because they had failed to show that the alleged illegal activity had, in fact, caused any injuries to the plaintiffs because of the absence of any allegation showing that their constitutional rights had been chilled or that there was present or immediately threatened injury to their employment opportunities from the unlawful governmental action. Also, in O'Shea v. Littleton, supra, the court held that black and white residents of Cairo, Illinois engaged in a program to eliminate racial discrimination lacked standing to bring an action to enjoin state officials from engaging in a deliberate pattern of illegal bail, sentencing and jury fee practices designed to prevent persons from lawfully engaging in activities to eliminate racial segregation in Cairo because plaintiffs failed to allege any imminent prosecutions contemplated against any of them and consequently the threat of injury from the alleged course of conduct that they attacked was simply too remote.

The law is settled that plaintiffs "must allege some threatened or actual injury resulting from the putatively illegal action before a . . . court may assume jurisdiction." Linda R.S. v. Richard D., 410 U.S. 614, 617, 93 S. Ct. 1146 (1973). And while for

purposes of this motion of summary judgment, we assume the contract was illegally awarded to American, plaintiffs have failed to show they have suffered any concrete injury from defendants' breach of a public duty. For this reason, plaintiffs lack standing to maintain this action.

## ORDER

On this November 29, 1979, upon consideration of defendants' motions for summary judgment, it is hereby ordered that a judgment is entered in favor of all defendants and against all plaintiffs.