# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sunoco Pipeline L.P.,                                   :
                          Petitioner                    :
                                                        :
                  v.                                    :   No. 1169 C.D. 2018
                                                        :   Argued: June 3, 2019
Pennsylvania State Senator Andrew                       :
E. Dinniman and Public Utility                          :
Commission,                                             :
                          Respondents                   :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ROBERT SIMPSON, Judge[1]
           HONORABLE ELLEN CEISLER, Judge


OPINION
BY PRESIDENT JUDGE LEAVITT                              FILED: September 9, 2019

Sunoco Pipeline L.P. (Sunoco) petitions for review of an interlocutory order of the Public Utility Commission (PUC) that affirmed, in part, an interim emergency order of its Administrative Law Judge (ALJ). The PUC amended the emergency order to permit its immediate appeal to this Court. On appeal, Sunoco argues that the PUC erred because the complainant, Pennsylvania State Senator Andrew E. Dinniman, lacked standing to file the underlying complaint with the PUC. Senator Dinniman disclaimed personal standing, and Sunoco contends that the Senator failed to establish grounds for legislative standing. For the reasons that follow, we reverse and remand.

## Background

Sunoco is a public utility regulated by the PUC. Sunoco operates a pipeline, known as Mariner East 1 (ME1), and is constructing two new pipelines,

---

[1] This matter was assigned to this panel before September 1, 2019, when Judge Simpson assumed the status of senior judge.

known as Mariner East 2 and 2X (ME2 and ME2X). The Mariner East pipelines transport natural gas liquids from the Marcellus and Utica Shale Basins through and within the Commonwealth, with a terminus at Sunoco's Marcus Hook Industrial Complex in Delaware County.[2]

Senator Dinniman represents the 19th Senatorial District, which includes West Whiteland Township (Township) in Chester County. In April 2018, he filed a formal complaint (Complaint) with the PUC seeking to enjoin Sunoco's operation of ME1 and the construction of ME2 and ME2X in the Township.

Senator Dinniman's Complaint alleged that during construction of the underground path for ME2 and ME2X, several sinkholes developed.[3] One of the sinkholes caused ME1 to become exposed and damaged the pipeline's underground support. In addition, homeowners in the Township experienced problems with their water service, including diminished water pressure and discolored water. The Complaint alleged that Sunoco had failed to warn and protect the public from danger and had failed to select a safe pipeline right-of-way that would avoid existing homes, industrial buildings and places of public assembly.

In addition to the Complaint, Senator Dinniman filed a petition for interim emergency relief to enjoin the operation of ME1 and the construction of ME2 and ME2X in the Township.[4] As did the Complaint, the petition alleged that the

---

[2] A complete factual background on the Mariner East pipeline project is set forth in this Court's decision in *In re Sunoco Pipeline, L.P.*, 143 A.3d 1000 (Pa. Cmwlth.), *appeal denied*, 164 A.3d 485 (Pa. 2016).

[3] Prior to the Senator filing the Complaint, on March 7, 2018, the PUC's Bureau of Investigation and Enforcement petitioned for an *ex parte* emergency order to suspend the operation of ME1 because a sinkhole exposed the pipeline at one location. The PUC suspended Sunoco's operation of ME1, but on May 3, 2018, the PUC reinstated ME1's operation.

[4] Senator Dinniman filed the emergency petition pursuant to Section 3.6 of the PUC's regulations, which states, in pertinent part, as follows:

2

construction and operation of Sunoco's pipelines raised serious public safety concerns.  He requested the PUC to issue an emergency order to stop Sunoco from operating or constructing the pipelines in the Township while the merits of the Complaint were litigated.

In the Complaint and petition for emergency relief, Senator Dinniman asserted standing as a legislator.  In support, Senator Dinniman pointed to his responsibilities as a state senator:

- He represents the 19th Senatorial District, which includes West Whiteland Township;

- He represents individuals in the 19th Senatorial District who have been affected by Sunoco's Mariner East pipeline project;

- He is a member of the Senate Environmental Resources and Energy Committee;

- He is a member of the Joint Legislative Air and Water Pollution Control and Conservation Committee;

---

(a)  A party may submit a petition for an interim emergency order during the course of a proceeding. The petition shall be filed with the Secretary and served contemporaneously on the Chief Administrative Law Judge and on the parties.

(b) To the extent practicable, a petition for an interim emergency order must be in the form of a petition as set forth in §5.41 (relating to petitions generally). A petition for an interim emergency order must be supported by a verified statement of facts which establishes the existence of the need for interim emergency relief, including facts to support the following:

(1) The petitioner's right to relief is clear.

(2) The need for relief is immediate.

(3) The injury would be irreparable if relief is not granted.

(4) The relief requested is not injurious to the public interest.

52 Pa. Code §3.6.

- He is a member of the General Assembly with the authority to receive, review and comment upon the Governor's annual expenditure plan for the Environmental Stewardship Fund under 27 Pa. C.S. §6104, which funds part of the Chester County Conservation District and its oversight of the watersheds and water supply of West Whiteland Township;

- He receives annual, mandatory reports from the PUC under the Public Utility Code, 66 Pa. C.S. §§320, 1327; and

- He serves on the Pennsylvania Pipeline Infrastructure Task Force, which recommends policies, guidelines and best practices to guide expansion of pipeline infrastructure in the Commonwealth.

Reproduced Record at 9a-10a, 31a-32a (R.R. __). Senator Dinniman asserted that these duties supported his claim of legislative standing.

The emergency petition was assigned to an ALJ, who conducted two days of hearings. Senator Dinniman testified that he filed the emergency petition in his "capacity as a state Senator." Notes of Testimony, 5/7/2018, at 121 (N.T. __); R.R. 90a.[5] Sunoco objected to Senator Dinniman's standing for the stated reason that Sunoco's operation and construction of the Mariner East pipelines in the Township will not impact the Senator's ability to propose or vote on legislation, which is the essence of legislative standing. Both parties presented evidence on whether an emergency order was warranted.

On May 21, 2018, after reviewing the evidence, the ALJ entered an emergency interim order directing Sunoco to cease operation of ME1 and all

---

[5] At the hearing, Senator Dinniman indicated that he could also bring the petition in his personal capacity. Subsequently, in his brief in support of the emergency petition, Senator Dinniman clarified that he initiated the proceeding solely in his official capacity as a senator.

construction of ME2 and ME2X until the PUC disposed of the Senator's Complaint. The ALJ determined that Senator Dinniman had legislative standing to pursue the action, explaining that, "his participation in this matter relates to his official duties as a Senator for the affected district." Interim Emergency Order, 5/21/2018, at 6.

The PUC reviewed the Interim Emergency Order. On June 15, 2018, it affirmed in part and reversed in part the ALJ's order. The PUC vacated the injunction as to the operation of ME1 but upheld the injunction as to the construction of ME2 and ME2X. The PUC rejected Sunoco's challenge to Senator Dinniman's standing. It held that Senator Dinniman had personal standing as a property owner in the Township who was adversely affected by the dangerous conditions that had developed from Sunoco's construction of the Mariner East pipelines. The PUC explained that it was "not convinced that the reasoning in the ALJ's Interim [] Order" supported a finding of legislative standing; however, it did not decide the issue, explaining that Senator Dinniman's personal standing mooted the issue. PUC Order, 6/15/2018, at 21.

Thereafter, Sunoco requested the PUC to certify its June 15, 2018, order for interlocutory appeal to this Court. On July 25, 2018, the PUC granted Sunoco's motion. Sunoco then filed a petition with this Court to allow an interlocutory appeal,[6] which this Court granted on September 27, 2018. The appeal was limited to the following question:

---

[6] Pennsylvania Rule of Appellate Procedure 1311(b) states in pertinent part:

> Permission to appeal from an interlocutory order containing the statement prescribed by 42 Pa. C.S. §702(b) may be sought by filing a petition for permission to appeal with the prothonotary of the appellate court within 30 days after entry of such order in the lower court or other government unit with proof of service on all other parties to the matter in the lower court or other government unit and on the government unit or clerk of the lower court, who shall file the petition of record in such lower court….

5

Does State Senator Dinniman have standing to pursue his claim before the [Commission]?

Commonwealth Court Order, 9/27/2018, at 1.

## Analysis

The Public Utility Code creates a private right of action to allow persons "with an interest" to enforce the Public Utility Code against a public utility. Section 701 states, in relevant part, as follows:

> [t]he commission, or *any person*, corporation, or municipal corporation *having an interest in the subject matter*, or any public utility concerned, *may complain in writing*, setting forth any act or thing done or omitted to be done by any public utility in violation, or claimed violation, of any law which the commission has jurisdiction to administer, or of any regulation or order of the commission.

66 Pa. C.S. §701 (emphasis added). The PUC has adopted a regulation that implements Section 701, and it states as follows:

> [a] person complaining of an act done or omitted to be done by a person subject to the jurisdiction of the Commission, in violation, or claimed violation of a statute which the Commission has jurisdiction to administer, or of a regulation or order of the Commission, *may file a formal complaint with the Commission*.

52 Pa. Code §5.21(a) (emphasis added).

To have standing to pursue a formal complaint before the PUC, the complainant must be aggrieved. A complainant can demonstrate that he is aggrieved if he can establish that he has a "*direct*, *immediate*, *and substantial* interest in the subject matter of the controversy." *Municipal Authority Borough of West View v. Public Utility Commission*, 41 A.3d 929, 933 (Pa. Cmwlth. 2012) (citation omitted)

---

PA. R.A.P. 1311(b).

6

(emphasis in original). Our Supreme Court explained, in the seminal case *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 283 (Pa. 1975) (plurality), that standing requires the complaining party to show a "harm to his interest," and the harm must be neither remote nor speculative. In addition, the complaining party must show "some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law." *Id.* at 282.

Stated simply, standing requires the complainant to be "negatively impacted in some real and direct fashion." *Markham v. Wolf*, 136 A.3d 134, 140 (Pa. 2016) (quoting *Pittsburgh Palisades Park, LLC v. Commonwealth,* 888 A.2d 655, 660 (Pa. 2005)). Absent that negative impact, the moving party lacks standing to pursue a formal complaint before the PUC.[7]

## I. Personal Standing

The PUC concluded that Senator Dinniman had personal standing because he owned property in the Township and, thus, was adversely affected by the operation and construction of Sunoco's pipelines. Sunoco argues that this was error because Senator Dinniman expressly disclaimed standing in his personal capacity. For his part, Senator Dinniman acknowledges that he asserts legislative standing alone. The PUC contends that it has discretionary authority to find Senator Dinniman has standing on grounds not asserted by him.

Sunoco argues that by raising the issue of personal standing *sua sponte*, the PUC put itself in the role of advocate. Sunoco contends that a tribunal should not "assume an advocate's function of introducing theories which were not raised

---

[7] Because the issue of standing raises a question of law, this Court's standard of review is *de novo*, and our scope of review is plenary. *Markham*, 136 A.3d at 138.

7

by the parties and resisted by a party." *Commonwealth v. Murchinson*, 899 A.2d 1159, 1163 (Pa. Super. 2006). *See also Hrivnak v. Perrone*, 372 A.2d 730, 733 (Pa. 1977) (court "may not assume the advocate's function of introducing theories not raised by the parties").

The PUC responds that *City of Pittsburgh v. Public Utility Commission*, 33 A.2d 641 (Pa. Super. 1943), established that it was authorized to hold that Senator Dinniman had personal standing. In that case, the PUC denied standing to the City of Pittsburgh, which sought to intervene in a utility rate hearing. The Superior Court affirmed the PUC's decision, explaining:

> *[q]uestions of procedure, including the question whether parties should be allowed to intervene in* one another's proceedings, are subordinate to the paramount functions of the [PUC] and should be left to its discretion *so long, of course, as it observes the basic requirements* designed for the protection of private as well as public interest.

*Id*. at 642-43 (emphasis added). Sunoco argues, and we agree, that the inquiry to determine whether a party has standing to initiate litigation is different than the inquiry to determine whether a party can intervene in existing litigation. Even so, the holding in *City of Pittsburgh* requires the PUC to adhere to the "basic requirements" of standing that were delineated in *William Penn Parking,* 346 A.2d 269.

Standing to file a formal complaint requires the moving party to have a direct, immediate, and substantial interest in the subject matter of the controversy. *Id*. at 280. Conversely, a person seeking to intervene in a proceeding need have only an "interest of such nature that participation … may be in the public interest."[8] 52

---

[8] The PUC's regulations state, in pertinent part, as follows:

8

Pa. Code §5.72(a)(3). The grant of intervention to a party is not "recognition by the [PUC] that the intervenor has a *direct interest in the proceeding* or might be aggrieved by an order of the [PUC] in the proceeding," only that the intervenor's participation will advance the public interest. 52 Pa. Code §5.75(c) (emphasis added).

Sunoco argues that even if Senator Dinniman had filed the Complaint in his personal capacity, the record does not support the PUC's conclusion that Senator Dinniman has personal standing. The Senator testified that he does not "live in the valley where the problems are." N.T. 125; R.R. 94a. It is undisputed that construction of ME2 and ME2X has had no adverse effects on his property or public water supply. The fact that the Senator resides in the Township, two miles from the pipelines, is not sufficient to show that he is aggrieved by their construction or operation. *See Armstead v. Zoning Board of Adjustment of City of Philadelphia*, 115 A.3d 390, 397 (Pa. Cmwlth. 2015) (objectors lacked standing even though their property was located near, but not adjacent, to a proposed sign). Again, we agree with Sunoco.

---

(a) *Persons*. A petition to intervene may be filed by a person claiming a right to intervene or an interest of such nature that intervention is necessary or appropriate to the administration of the statute under which the proceeding is brought. The right or interest may be one of the following:

(1) A right conferred by statute of the United States or of the Commonwealth.

(2) An interest which may be directly affected and which is not adequately represented by existing participants, and as to which the petitioner may be bound by the action of the Commission in the proceeding.

(3) Another interest of such nature that participation of the petitioner may be in the public interest.

52 Pa. Code §5.72(a).

9

The PUC erred in raising the issue of personal standing *sua sponte* and injecting this theory of standing into the case against Senator Dinniman's wishes. Even so, the PUC erred in deciding the Senator has personal standing because the record does not show that he has been aggrieved to the extent required under *William Penn Parking*. We hold that the PUC erred in concluding that Senator Dinniman had personal standing to file a formal complaint against Sunoco simply because its pipelines are located in the Township where he lives. The Complaint alleges neither harm to Senator Dinniman's property nor harm to his person, and the hearing before the ALJ did not yield evidence of either type of harm.

## II. Legislative Standing

Sunoco argues that Senator Dinniman lacks standing in his legislative capacity to file his Complaint with the PUC because he has not shown how the actions of Sunoco have impaired his authority to act as a legislator. Senator Dinniman responds that his background, knowledge, and responsibilities relating to pipelines and the environment, in addition to his "obligation to both perform his State Senatorial duties and protect and advocate for his constituents in the 19[th] Senatorial District[]" give him legislative standing. Dinniman Brief at 8.

Legislative standing was first addressed by this Court in *Wilt v. Beal*, 363 A.2d 876 (Pa. Cmwlth. 1976). There, a state representative, Representative W. William Wilt, sought to enjoin the Secretary of Public Welfare from using a newly constructed geriatric center as a mental healthcare facility. Representative Wilt asserted legislative standing on the theory that his vote on legislation had been frustrated; the respondents challenged Representative Wilt's claim to legislative standing. This Court reviewed federal cases addressing legislative standing and summarized the relevant principles as follows:

10

> [L]egislators … are granted standing to challenge executive
> actions when specific powers unique to their functions under the
> Constitution are diminished or interfered with. Once, however,
> votes which they are entitled to make have been cast and duly
> counted, their interest as legislators ceases. Some other nexus
> must then be found to challenge the allegedly unlawful action.
> We find this distinction to be sound for it is clear that certain
> additional duties are placed upon members of the legislative
> branch which find no counterpart in the duties placed upon the
> citizens the legislators represent.

*Id.* at 881 (footnote omitted). Legislators have duties not shared with citizens, but their interest in legislation terminates with completion of their vote. Representative Wilt's vote was counted and, therefore, he retained "no personal stake … in the outcome of his vote which is different from the stake each citizen has in seeing the law observed." *Id.* (citation omitted). Stated otherwise, enforcement of legislation is not a special concern of legislators but, rather, a concern of every engaged citizen.

In *Fumo v. City of Philadelphia*, 972 A.2d 487 (Pa. 2009), state legislators challenged the City's issuance of a license for the construction of a casino upon submerged lands in the Delaware River. They asserted that the City's action had usurped their legislative authority to regulate riverbeds, a prerogative belonging solely to the Commonwealth of Pennsylvania. The Supreme Court summarized the principles of legislative standing as follows:

> Legislators and council members have been permitted to bring
> actions based upon their special status where there was a
> discernible and palpable infringement on their authority as
> legislators. The standing of a legislator or council member to
> bring a legal challenge has been recognized in limited instances
> in order to permit the legislator to seek redress for an injury the
> legislator or council member claims to have suffered in his
> official capacity, rather than as a private citizen. Legislative
> standing has been recognized in the context of actions brought to
> protect a legislator's right to vote on legislation or a council

11

member's viable authority to approve municipal action. Legislative standing also has been recognized in actions alleging a diminution or deprivation of the legislator's or council member's power or authority. At the same time, however, legislative standing has not been recognized in actions seeking redress for a general grievance about the correctness of governmental conduct.

*Id*. at 501. Applying these principles, the Supreme Court concluded that the legislators had legislative standing to pursue their challenge to the City's issuance of the license to the extent it interfered with their authority to regulate submerged lands in the Delaware River. The Supreme Court explained that "this claim reflects the state legislators' interest in maintaining the effectiveness of the legislative authority and their vote." *Id.* at 502. By contrast, the legislators did not have standing to challenge the manner in which the license was issued because that claim did not "demonstrate any interference with or diminution in the state legislators' authority as members of the General Assembly[.]" *Id.* at 501-02.

Recently, our Supreme Court addressed the question of legislative standing in *Markham*, 136 A.3d at 145. There, state legislators sought to intervene in a challenge to the issuance of an executive order they characterized as granting organizational labor rights to domestic home care workers. The state legislators challenged the executive order as conflicting with state labor laws and constituting an unauthorized attempt by the Governor to exercise legislative power in violation of separation of powers. The Supreme Court held that the legislators lacked standing in their legislative capacity to lodge this challenge.

The Supreme Court explained legislative standing is available in limited circumstances.

Standing exists only when a legislator's direct and substantial interest in his or her ability to participate in the voting process is

12

negatively impacted, *see Wilt,* or when he or she has suffered a concrete impairment or deprivation of an official power or authority to act as a legislator, *see Fumo* (finding standing due to alleged usurpation of legislators' authority to vote on licensing).

*Id.* Conversely, a legislator lacks standing

where he or she has an indirect and less substantial interest in conduct outside the legislative forum which is unrelated to the voting or approval process, and akin to a general grievance about the correctness of governmental conduct, resulting in the standing requirement being unsatisfied. [*Fumo*] (rejecting standing where legislators' interest was merely disagreement with way administrator interpreted or executed her duties, and did not interfere with legislators' authority as members of the General Assembly).

*Id.* The Supreme Court rejected the legislators' contention that their "ability to participate in the voting process [was] negatively impacted" by the Governor's order. *Id.* Further, the legislators did not demonstrate that they "had suffered a concrete impairment or deprivation of an official power or authority to act as a legislator." *Id.*

Here, Senator Dinniman bases his legislative standing upon certain duties he performs as a state senator. These duties include: (1) his representation of the community affected by Sunoco's Mariner East pipeline project; (2) his participation on various Senate committees; (3) his entitlement to receive, review and comment on the Governor's annual expenditure plan for the Environmental Stewardship Fund; and (4) his receipt of annual reports from the PUC. Senator Dinniman does not explain how Sunoco's actions have impacted any of these duties, or his right "to participate in the voting process." *Markham,* 136 A.3d at 145.

Senator Dinniman's Complaint does not allege an injury to his ability to act as a legislator. Instead, the Complaint alleges that Sunoco's actions have

13

caused injury to "private and public drinking water supplies[,]" "homes [and] other occupied dwellings, [and the] residents of [the] Township[.]" Complaint at 12, ¶¶63, 64; R.R. 18a. It further alleges that Sunoco's route for ME2 and ME2X "risks a catastrophe to the residents and other individuals, homes, schools, water supplies, Amtrak and SEPTA rail lines and other infrastructure." Complaint at 13, ¶67; R.R. 19a. None of these alleged injuries impact the Senator's ability to vote for or against legislation.

Senator Dinniman explains that he filed the Complaint to force the PUC to "review, elucidate and improve upon the safety of a specific public utility, as operated within his district, which affects the health, safety and economic stability of his constituents." Dinniman Brief at 9. Though Senator Dinniman desires to "protect and advocate for his constituents[,]" *id.* at 8, this desire does not constitute a basis for legislative standing. Legislators are sent to Harrisburg to propose legislation and to vote for or against proposed legislation. Legislators are not elected to serve constituents in a *parens patriae* capacity, with either the duty or the authority to file lawsuits on behalf of constituents who may, or may not, desire such assistance.

This Court's decision in *Corman v. National Collegiate Athletic Association*, 74 A.3d 1149 (Pa. Cmwlth. 2013), on which Senator Dinniman relies, is distinguishable. There, a state senator, Senator Jake Corman, and the state treasurer filed a complaint against the National Collegiate Athletic Association (NCAA), asserting that the NCAA was required to deposit certain monies into an endowment fund.[9] To establish legislative standing, Senator Corman relied on a statute that required him, as the Chair of the Senate Appropriations Committee, to

---

[9] This fund was established by the Institution of Higher Education Monetary Penalty Endowment Act, Act of February 20, 2013, P.L. 1, 24 P.S. §§7501-7505.

14

receive information from the Pennsylvania Commission on Crime and Delinquency related to the endowment. The statute provided that he was to receive "notice of any proposed expenditure of money from the endowment … for review and comment," as well as "an annual report itemizing all approved expenditures from the endowment[.]" *Id*. at 1160.

In addressing the issue of the senator's standing, this Court observed that "the legislature statutorily vested certain specifically-identified individuals, including [the senator], with the right to 30 days advance notice of proposed expenditures … in order to review and comment upon the proposed expenditures." *Id.* at 1161. This advance notice was required so that those individuals identified in the statute would have an opportunity to be heard regarding proposed expenditures. Based on these discrete statutory responsibilities, this Court determined that the legislature had "implicitly ordained" that the senator was "a proper party litigant." *Id.* (quotation omitted). By contrast, in the case *sub judice*, there is no statute that vests Senator Dinniman with duties specific to Sunoco's gas pipelines or enforcement of the Public Utility Code that have not been conferred on other legislators.

Similarly, Senator Dinniman's authority to review and comment on the Governor's annual expenditures of the Environmental Stewardship Fund is shared with all legislators. 27 Pa. C.S. §6104(e)(1).[10] Likewise, Senator Dinniman's right

---

[10] This provision states as follows:

> (e) Legislative oversight.--
>> (1) An annual expenditure plan for the fund shall be submitted by the Governor to the General Assembly as part of the Governor's annual budget submission. The expenditure plan shall be open for review and comment by the members of the General Assembly and shall include a detailed listing of the types of programs for the actual year, current year and proposed budget year.

15

to receive annual reports from the PUC is shared with all legislators. 66 Pa. C.S. §321 (PUC transmits an annual report on its conduct "to the Governor and the General Assembly"). These duties do not separate Senator Dinniman from the rest of the General Assembly because Sunoco is constructing a pipeline in the 19th Senatorial District. Nor can these duties be construed to confer legislative standing upon Senator Dinniman to institute litigation to stop Sunoco's construction of the pipeline.

### Conclusion

For the above-stated reasons, we hold that Senator Dinniman lacked either legislative or personal standing to file the Complaint and petition for emergency interim relief against Sunoco, and the PUC erred in so holding. Accordingly, we reverse the PUC's decision and remand this matter to the PUC to dissolve the interim emergency injunction and dismiss the Complaint.

_____
MARY HANNAH LEAVITT, President Judge

Judge Fizzano Cannon did not participate in the decision in this case.

---

27 Pa. C.S. §6104(e)(1). Senator Dinniman does not explain how Sunoco's pipeline activities in any way involve the Environmental Stewardship Fund.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sunoco Pipeline L.P.,                         :
                        Petitioner            :
                                              :
        v.                                    :   No. 1169 C.D. 2018
                                              :
Pennsylvania State Senator Andrew             :
E. Dinniman and Public Utility                :
Commission,                                   :
                        Respondents           :

# **O R D E R**

AND NOW, this 9th day of September, 2019, the order of the Public Utility Commission (PUC) in the above-captioned matter dated June 15, 2018, is REVERSED and the matter is REMANDED to the PUC with instructions to dissolve the interim emergency injunction and dismiss the Complaint.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge