Pennsylvania Petroleum Association, Petitioner *v.* Pennsylvania Power & Light Company and Pennsylvania Public Utility Commission, Respondents.

Argued June 8, 1977, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt. Judge Kramer did not participate in the decision.

*Ronald Ziegler,* with him *Tubis, Schwartz & Ziegler,* for petitioner.

*Robert H. Young,* with him *Vincent Butler, Walter R. Hall, II,* and, of counsel, *Morgan, Lewis & Bockius,* for respondent, Pennsylvania Power & Light Company.

*Edward J. Morris,* Counsel and *Albert W. Johnson, III,* Assistant Counsel, for respondent, PUC.

OPINION BY JUDGE BLATT, September 23, 1977:

On March 31, 1975, Pennsylvania Power & Light Co. (PP&L) filed supplement numbers 24 and 25 to its Electric Tariff with the Pennsylvania Public Utility Commission (PUC). These supplements requested increases in the rates charged for electricity and a modification in PP&L's rate design (*i.e.,* the relationships of rates charged different customer classes). Hearings on the proposed supplements were held in the period between September 1975 and January 1976. Eighty persons filed complaints with the PUC regarding the supplements and participated in varying degrees in the hearings. Among these complainants was the Pennsylvania Petroleum Association (PPA) which presented two witnesses and 12 exhibits. The PUC issued a formal rate order on September 17, 1976, ap-

proving PP&L's requested supplement No. 25 rate level and substantially approving its requested rate design. This appeal was initiated by a petition for review filed by PPA from the PUC's order. PP&L has filed a motion to quash, arguing that PPA is not a person aggrieved by the PUC's order and therefore has no standing to bring this appeal.

Prior to the enactment of the Pennsylvania Rules of Appellate Procedure, Section 1101 of the Public Utility Law[1] (Act), permitted appeals from orders of the PUC by "any party to the proceedings affected thereby." *See City of Pittsburgh v. Pennsylvania Public Utility Commission,* 3 Pa. Commonwealth Ct. 546, 284 A.2d 808 (1971). This section was suspended by Pa. R.A.P. 5105(c) and subsequently repealed.[2] Appeals from PUC orders must now be taken pursuant to the rules of appellate procedure primarily chapter 15, and Pa. R.A.P. 501 defines the necessary interest a party must have to bring an appeal as follows:

> Except where the right of appeal is enlarged by statute, *any party who is aggrieved by an appealable order . . . may appeal therefrom.* (Emphasis added.)

PPA argues initially that the exemption contained in the above rule applies to allow a party who has been "affected," rather than "aggrieved," by a PUC order to appeal that order. Simply stated, PPA contends that a recent amendment to Section 1112 of the Act, 66 P.S. §1442, has enlarged the right of appeal from orders of the PUC to include persons "affected" by such orders, which PPA implies is a less stringent

---

[1] Act of May 28, 1937, P.L. 1053, *as amended,* 66 P.S. §1101 et seq.

[2] Section 20 of the Act of October 7, 1976, P.L. 1057, repealed absolutely Sections 1101 to 1106, and 1109 of the Public Utility Law, 66 P.S. §§1431 to 1436, 1438.

standard.[3] The text of that section, however, does not support PPA's argument but instead reads as follows with the amended language emphasized and the superseded language bracketed:

> Whenever the commission shall make any rule, regulation, finding, determination, or order under the provisions of this act, the same shall be prima facie evidence of the facts found, and shall remain conclusive upon all parties affected thereby, unless set aside, annulled, or modified [in an appeal taken as provided in this act] *on judicial review.*

We do not believe that this amendment was intended to confer a basis for seeking appellate review. Both the former and the present versions of Section 1112 describe only the weight to be given orders of the PUC when collaterally challenged, and thus prohibit "parties affected" by the order from challenging it other than upon direct judicial review. We believe that the amendment of the section was intended merely to conform the section with the terminology employed in the appellate rules[4] and not to enlarge the right to appeal orders of the PUC.

Although undefined in the appellate rules, the concept of "aggrievement" of a party by an order which confers standing on that party to appeal that order has been examined in a long series of cases in this

---

[3] Section 1101 of the Public Utility Law, 66 P.S. §1431, formerly permitted appeals from orders of the PUC by "any party to the proceedings affected thereby." The interpretation given the word "affected" in that section was similar to that given the word "aggrieved" for purposes of bringing appeals. *See Arsenal Board of Trade v. Pennsylvania Public Utility Commission,* 166 Pa. Superior Ct. 548, 553, 72 A.2d 612, 615 (1950).

[4] Chapter 15 of the Pennsylvania Rules of Appellate Procedure favors use of the term "judicial review" rather than "appeal." *See* note to Pa. R.A.P. 1503.

Commonwealth. The traditional statement of this concept was repeated by our Supreme Court in *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 191, 346 A.2d 269, 280 (1975):

> [The party] must have a direct interest in the subject-matter of the particular litigation, otherwise he can have no standing to appeal. And not only must the party desiring to appeal have a direct interest in the particular question litigated, but his interest must be immediate and pecuniary, and not a remote consequence of the judgment. The interest must also be substantial. (Citations omitted.)

Although the requirement that the asserted interest have a pecuniary element has generally been eroded,[5] the standing of PPA to bring this appeal remains dependent on whether or not PPA can demonstrate an interest in PP&L's rates and rate design which is direct, substantial, immediate and not a remote consequence of the PUC's order. *Accord, Snelling v. PennDOT,* 27 Pa. Commonwealth Ct. 276, 366 A.2d 1298 (1976); *Wilt v. Beal,* 26 Pa. Commonwealth Ct. 298, 363 A.2d 876 (1976); *Cablevision v. Zoning Hearing Board,* 13 Pa. Commonwealth Ct. 232, 320 A.2d 388 (1974).

In its complaint, the initial pleading filed with the PUC, PPA described itself as "a non-profit statewide trade association of retail distributors of number 2 middle distillate fuel oil for residential and commercial space and water heating end-use purposes." PPA's interest in the proceedings was stated in the complaint as follows: "[m]any PPA members are competitors of PP&L in residential and commercial

---

[5] *See Wm. Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 195, 346 A.2d 269, 282 (1975); *Wilt v. Beal,* 26 Pa. Commonwealth Ct. 298, 300, 363 A.2d 876, 878 (1976).

space and water heating markets and have an interest in the rate schedules proposed by PP&L for residential and commercial classes and subclasses of customers in this proceeding." The subject matter of the complaint involved the propriety of the proposed and then-existing PP&L rate design which PPA alleged was discriminatory in that the rate charged residential and commercial space and water heating end-users was unreasonably *below* the actual costs of service and that this unreasonably low rate excluded competition in the residential and commercial space and water heating market in which the PPA members participated. The complaint did not allege that PPA nor any of its members were customers of PP&L.

PPA's petition for review filed with this Court continues the same arguments with respect to the PUC's order but also contains the allegation that some of PPA's members are customers of PP&L. PPA admits in its brief that in its presentation before the PUC it neither identified nor presented any evidence concerning its members who were customers of PP&L. Based on the limited record before us, therefore, we must conclude that the predominant interest of PPA in the PUC's order here appealed was that of a competitor seeking to nullify the economic advantage PP&L enjoyed in the commercial and residential space and water heating market because of its PUC-approved rate structure. Although PPA has alleged in its petition for review an alternative interest in the order appealed from, *i.e.*, that of its members who are customers of PP&L and who are charged for electricity pursuant to an allegedly discriminatory rate design, we believe that PPA's failure to initially allege in its complaint that some of its members were PP&L customers and to identify these members during its presentation before the PUC prevents this Court from considering the allegation at this point.

The record persuades us therefore that PPA's interest stems from the fact that the PUC order here appealed continues its members' competitive disadvantage with regard to PP&L in the commercial and residential space and water heating market. Our review of the case law concerning the standing of parties alleging competitive injury to appeal leads us to conclude that such parties have standing only where the alleged competition is prohibited by a regulatory scheme in which both parties participate. In *Delaware County National Bank v. Campbell,* 378 Pa. 311, 106 A.2d 416 (1954), a bank was found to have standing to challenge a merger between two other banks because the statutory scheme regulating banks prohibited competition which threatened the financial stability of such institutions. Likewise, in *Franklin Federal Savings and Loan Ass'n v. Patterson,* 421 Pa. 409, 218 A.2d 724 (1966), a savings and loan association had standing to challenge the establishment of a competing savings and loan association nearby since excessive competition was prohibited by the state banking code. *Cf. Ritter Finance Co. v. Myers,* 401 Pa. 467, 165 A.2d 246 (1960), in which a loan company did not have standing to challenge the granting of a license to a nearby competitor because the law regulating small loan companies was not concerned with competition between such companies. Because we can find here no evidence of a regulatory scheme in which both parties participate which prohibits competition between them, we must conclude that PPA does not have a substantial interest in the PUC order sufficient to bring this appeal. *See and compare with* the concurring opinion of Justice ROBERTS in *Pennsylvania Tavern Ass'n v. Pennsylvania Liquor Control Board,* Pa. , , 372 A.2d 1187, 1192 (1977).

PPA argues finally that PP&L has waived any challenge to PPA's standing to bring this appeal by

failing to challenge its standing during the hearings before the PUC. We disagree. Pa. R.A.P. 501 clearly establishes a threshold interest (aggrievement) which a prospective appellant must demonstrate to bring an appeal under the rules. We do not believe that the requirement that a prospective appellant be aggrieved by the order he is attempting to appeal is one which can be waived by the action or inaction of an opponent because this requirement is imposed by statute. To hold otherwise would allow an opponent's action or inaction to enlarge the statutory right of appeal to include parties not aggrieved by the order appealed from. We believe therefore that PP&L's failure to challenge the standing of PPA to participate before the PUC does not prevent it from doing so here.

PP&L's motion to quash is granted.

Judge CRUMLISH, JR. concurs in decision only.

Judge KRAMER did not participate in the decision in this case.

## ORDER

AND Now, this 23rd day of September, 1977, the motion of Pennsylvania Power and Light Company to quash the appeal of the Pennsylvania Petroleum Association is hereby granted.

———

CONCURRING OPINION BY PRESIDENT JUDGE BOWMAN:

The majority has quashed a petition for review in the nature of an appeal by the Pennsylvania Petroleum Association (PPA) from an adjudication of the Pennsylvania Public Utility Commission (PUC) in a rate proceedings for the reason that the competitive injury assertedly suffered by petitioner as to a class of rates for which an increase was sought by a utility and approved by the PUC is an inadequate interest to confer upon a party the necessary standing to appeal the adjudication. I concur in the result, as I

am of the view that the particular interest sought to be asserted by petitioner before the PUC is not cognizable in a rate proceedings.

The troublesome area of one's standing to appeal, which in turn involves concepts of one's status below and of aggrievement—a satisfactory and clear resolution of which has long eluded the case law on the subject—compels me to comment further in this case as I do not wholly subscribe to the majority opinion.

Often ignored as the essential point of departure from which standing issues must be resolved is the distinction between standing to initiate or participate in a quasi-judicial or judicial proceeding and standing to seek judicial review or further judicial review. The former requires a real party in interest as well as concrete, adverse interest. The latter entails concepts of reviewability and requires a final, appealable order as well as an "aggrieved" party. When addressing reviewability, one speaks to the jurisdiction of the courts and their power to hear the case.

I agree with the majority that the action or inaction of parties below should not be permitted to enlarge or diminish the class of persons entitled to seek judicial review, as that class is defined by Pa. R.A.P. 501.[1] When, however, a party is permitted to appear initially, and no objection is made to such appearance, then that issue cannot be raised on appeal. *Wynne-*

---

[1] Rule 501 of the Pennsylvania Rules of Appellate Procedure defines the class of persons entitled to appeal:

> Except where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom.

The official comment enlarges somewhat the concept of "aggrievement":

> Whether or not a party is aggrieved by the action below is a substantive question determined by the effect of the action on the party, etc.

*wood Civic Association v. Lower Merion Township Board of Adjustment,* 406 Pa. 413, 179 A.2d 649 (1962); *Baker v. Zoning Hearing Board of West Goshen Township,* 27 Pa. Commonwealth Ct. 602, 606, 367 A.2d 819, 821 (1976).[2]

As I define the term "aggrieved," a qualified party, asserting a protected interest, is *necessarily* aggrieved by an adverse decision of the Commission. *Baker v. Zoning Hearing Board of West Goshen Township, supra,* at 608, 367 A.2d at 822. To this extent, then, the concept of standing is incorporated into reviewability.

Essentially, "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. . . . [Its] dimensions [are] founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin,* 422 U.S. 490, 498 (1975) (citation omitted). "Where statutes are concerned, the trend is toward enlargement of the class of people who may protest administrative action. The whole drive for enlarging the category of aggrieved 'persons' is symptomatic of that trend." *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 154 (1970).

The test applied in these cases accords standing where the plaintiff has suffered (or will suffer) "in-

---

[2] *See* Pa. R.A.P. 1551, Scope of Review:

(a) Review of quasi-judicial orders.—Review of quasi-judicial orders shall be heard by the court on the record. No question shall be heard or considered by the court which was not raised before the government unit except:

(1) Questions involving the validity of a statute.

(2) Questions involving the jurisdiction of the government unit over the subject matter of the adjudication.

(3) Questions which the court is satisfied that the petitioner could not by the exercise of due diligence have raised before the government unit.

*See also* Pa. R.A.P. 302.

jury in fact" and the interest he seeks to protect is "arguably within the zone of interests sought to be protected or regulated by the statute or constitutional guarantee in question." *See Association of Data Processing Service Organizations, Inc. v. Camp, supra* at 153; *see also Wm. Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975); *Wilt v. Beal,* 26 Pa. Commonwealth Ct. 298, 363 A.2d 876 (1976).

Rather than apply this test, the majority would require explicit statutory protection of competitive interests. By making a privilege-creating statute a *sine qua non* for interest standing, the majority opinion represents a restatement of the "legal right" requirement which does not appear to be sanctioned by recent opinions of the United States Supreme Court and our Supreme Court.[3]

PPA contends that the rate schedules of PP&L unjustly and unreasonably exclude competition in certain heating markets by distributors of other sources of energy, PPA members included. By proposing rates unrelated to the actual cost of services within the markets concurrently served by PPA, PP&L would allegedly be requiring certain other customer classes to not only subsidize the lower-rated customers, but also subsidize a competitive advantage enjoyed by PP&L over alternative distributors unrelated to market efficiency.

When a supplier of a competitive product alleges such an injury to his economic well-being, which arises as a direct consequence of the market activities of the competing public utility and its rate schedule as sanctioned by the responsible governmental agency, then

---

[3] Expressly repudiated for federal purposes in *Association of Data Processing Service Organizations, Inc. v. Camp, supra,* and implicitly for Pennsylvania in *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh, supra; Wilt v. Beal, supra,* and companion cases.

I believe that supplier has alleged a sufficiently substantial, direct and immediate "injury in fact" to confer upon it interest standing. *Cf. Wm. Penn Parking Garage, Inc. v. City of Pittsburgh, supra.*[4]

A rate proceeding would appear, however, to be an improper proceedings in which to assert such a competitive interest. Approval of a proposed rate increase is made dependent upon that rate's fair, just, reasonable and nondiscriminatory nature vis-a-vis the public *qua* consumer.[5] Rate cases are to be given preference over all other proceedings and are to be decided as speedily as possible.[6] Consequently, we should carefully guard against the entrance of collateral issues into these proceedings, *see, e.g., N.A.A.C.P. v. P.U.C.,* 5 Pa. Commonwealth Ct. 312, 290 A.2d 704 (1972), and have held that the rights to be protected

[4] PP&L has also questioned the standing of PPA, as an association, to assert the individual interests of its members. Prior law, which required the assertion of a "legal right," would have denied PPA "party standing." *See, e.g., Penn-Harris Hotel Co. v. Pennsylvania Public Utility Commission,* 166 Pa. Superior Ct. 394, 71 A.2d 853 (1950). The modern trend is different:

> Even in the absence of injury to itself, an association may have standing solely as the representative of its members. . . . The possibility of such representational standing, however, does not eliminate or attenuate the constitutional requirement of a case or controversy. . . . The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought the suit. (Citations omitted.)

*Warth v. Seldin, supra* at 511; *Boston Stock Exchange v. State Tax Commission,* U.S. , 50 L. Ed. 2d 514 (1977) ; *cf. Pennsylvania Coal Mining Ass'n v. Insurance Dep't,* Pa. , 370 A.2d 685 (1977).

[5] *See* Sections 301-09 of the Public Utility Law, Act of May 28, 1937, P.L. 1053, *as amended,* 66 P.S. §§1141-49.

[6] 52 Pa. Code §3.162; Section 312 of the Public Utility Law, 66 P.S. §1152.

in these proceedings, are the rights of the complainants as consumers. *See, e.g., Pennsylvania Public Utility Commission v. Commonwealth,* 23 Pa. Commonwealth Ct. 566, 353 A.2d 887 (1976).

On the other hand, the Public Utility Law provides for the filing of a formal written complaint setting forth any act or thing done or omitted to be done by a public utility in violation of any law which the commission has jurisdiction to administer or of any regulation or order of the commission.[7] Subsequent notice, hearing and adjudication,[8] provide a much more satisfactory procedure for resolution of claims such as those presented by PPA, than does a rate proceeding.

Thus, even though there might otherwise exist a sufficiently direct and immediate "injury in fact" to afford one standing in a given proceedings, I would add another dimension and deny such standing in a proceedings devoted to a particular purpose not related to the interest asserted. For this reason I concur with the result of the majority opinion.

---

[7] 52 Pa. Code §3.121; Section 1001 of the Public Utility Law, 66 P.S. §1391.

[8] *See* Sections 1001-14 of the Public Utility Law, 66 P.S. §§1391-1404.

---

DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent.

Pennsylvania Petroleum Association (PPA) complained that the rate schedule for electric services proposed by the Pennsylvania Power and Light Company (PP&L) included charges for residential and commercial space and water heating which were below the utility's cost, and that the purpose of such insufficient rates was to destroy competition by PPA's members[1]

---

[1] As the majority notes, PPA participated fully in the PUC hearings in this rate case.

in the space and water heating markets. Implicit in PPA's complaint is a charge that some of the utility's customers are being required to pay more for service than they should in order that PP&L, by undercharging others, may drive PPA's members out of the water and space heating market. The Public Utility Law, Act of May 28, 1937, P.L. 1053, *as amended*, 66 P.S. §1101 et seq., requires that every rate demanded by a public utility shall be just and reasonable. I believe that private businesses which are in competition with a public utility and who complain that some of a utility's rates have been fixed at levels below cost for the purpose of stifling competition are parties aggrieved by the PUC order approving the rates. The interest alleged is direct,[2] immediate and substantial. It is also pecuniary, if this is still a requirement of standing. *See Wm. Penn Parking Garage, Inc. v. City of Pittsburgh, supra* note 2, at 195, 346 A.2d at 282.

---

[2] "The requirement that an interest be 'direct' simply means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains." Justice ROBERTS in *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 195, 346 A.2d 269, 282 (1975).