**Katrina V. WADDINGTON t/d/b/a Waddington Tours, Petitioner,**

**v.**

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 1995.

Decided Dec. 29, 1995.

---

No appearance for petitioner.

Susan T. Povilaitis, Assistant Counsel, for respondent.

Before COLINS, President Judge, NEWMAN, Judge, and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Katrina V. Waddington, t/d/b/a Waddington Tours (Waddington) petitions for review of an order of the Pennsylvania Public Utility Commission (Commission) denying her exceptions to a decision of an Administrative Law Judge (ALJ), sustaining the complaint of Blue & White Lines, Inc. (Blue & White) and assessing a civil penalty against her in the amount of $4,750.00. We affirm.

Blue & White is a common carrier that holds authority from the Commission to transport persons from points in the Counties of Cambria, Blair, Huntingdon, Bedford and the City of Johnstown. It provides group service, party service and individual tour programs.

Waddington is also a common carrier and has authority from the Commission to operate group and party service from the City of Altoona to various points in Pennsylvania. In addition, Waddington has Interstate Commerce Commission authority to operate between the forty-eight contiguous states.

On January 29, 1993, Blue & White filed a formal complaint against Waddington alleging that she committed unfair practices in violation of the Public Utility Code (Code).[1] Specifically, Blue & White asserted that Waddington provided brokerage services[2]

---

**1.** 66 Pa.C.S. §§ 101–3315.

**2.** Section 2501(b) of the Code defines a "broker" as follows:

and solicited the public to purchase tickets for transportation and accommodations that was provided in the equipment of a competing carrier, Fullington Auto Bus (Fullington). Blue & White argued it was illegal for Fullington to permit Waddington to use and to be paid for Fullington's rights.[3] Blue & White also alleged that Waddington operated her equipment beyond her authorized points of operation.

After an administrative hearing, the ALJ concluded that Waddington had provided unauthorized brokerage services[4] in violation of Section 2501(b) of the Code and Sections 39.4, 39.8, 39.10 and 39.11 of the Commission Regulations (Regulations).[5] Waddington's activities included advertising and arranging tours (i.e., transportation, meals, admission tickets and lodging) for points originating outside the scope of her certification going to points in Pennsylvania, with interim stops, and returning to points outside her certificated areas. The ALJ issued an initial decision recommending that the complaint be sustained and that Waddington be fined and directed to cease and desist from further violations of the Code and Regulations.

Waddington filed exceptions contending, *inter alia,* that the ALJ erred in determining that Blue & White had standing to bring the complaint and that Waddington acted unlawfully in her joint operations with Fullington. The Commission denied Waddington's exceptions holding that Blue & White did have standing to bring the complaint pursuant to Section 701 of the Code[6]. In the Commission's opinion, the record established that Blue & White had a direct economic interest in the service provided by Waddington as evidenced by the fact that Blue & White made a competitive bid on the October 26, 1991 charter trip for which Waddington was observed operating her business in conjunction with Fullington.

In addition, the Commission disagreed with Waddington's contention that a brokerage license was unnecessary for the trips she provided jointly with Fullington because either she or Fullington had the necessary authority from the Commission. The Commission held that in order to perform the transportation services at issue, Waddington was required to have a broker's license.

---

Any person or corporation not included in the term 'motor carrier' and not a bona fide employee or agent of any such carrier, or group of such carriers, who or which, as principal or agent, sells or offers for sale any transportation by a motor carrier, or the furnishing, providing, or procuring of facilities therefor, or negotiates for, or holds out by solicitation, advertisement, or otherwise, as one who sells, provides, furnishes, contracts, or arranges for such transportation, or the furnishing, providing or procuring of facilities therefor, other than as a motor carrier directly or jointly, or by arrangement with another motor carrier, and who does not assume custody as a carrier.

**3.** Blue & White highlighted four tours in which Waddington allegedly acted as a broker. It contended that Waddington received payment for the tours and remitted only a percentage of the profits to Fullington for use of the motor coach. On those occasions, Waddington retained all revenues for the admission tickets, dinners or other accommodations, as well as a portion of the motor coach transportation. Since Fullington did not receive any monies for arranging the accommodations or procuring transportation services, Blue & White argued that Waddington performed brokerage services on behalf of Fullington. Blue & White stressed that this unautho-

rized behavior was established by proof of advertisements for the tours and the actual rendering of tour service.

**4.** Specifically, the ALJ found that Waddington carried out unauthorized brokerage services on the following dates: October 11, 1990; July 16, 1991; August 7, 1991; August 17, 1991; August 18, 1991; October 26, 1991; November 4, 1991; November 9, 1991; December 5, 1992; December 16, 1992; and January 11, 1993.

**5.** 52 Pa.Code §§ 39.4, 39.8, 39.10 and 39.11. Generally, these sections address records to be kept by passenger brokers, misrepresentation, rebating and the duties and obligations of brokers.

**6.** 66 Pa.C.S. § 701. That section provides:

The commission, or any person, corporation, or municipal corporation having an interest in the subject matter, *or any public utility concerned,* may complain in writing, setting forth any act or thing done or omitted to be done by any public utility in violation, or claimed violation, of any law which the commission has jurisdiction to administer, or of any regulation or order of the commission. (Emphasis supplied.)

On appeal to this Court,[7] Waddington again asserts that Blue & White did not have standing to initiate this complaint and that she acted lawfully in arranging transportation in conjunction with another licensed operator.

■ Initially, Waddington maintains that the Commission has given an overly broad interpretation to Section 701 of the Code. While Section 701 states that any public utility concerned may complain about an act or omission of another public utility, Waddington argues that the public utility concerned must have an interest in the subject matter in order to file a complaint. In other words, status as a public utility does not in and of itself provide standing to bring a complaint before the Commission.

■ Undoubtedly, in order to have standing under Section 701, a party must have a direct, immediate and substantial interest in the subject matter of the controversy. *See Penn–Harris Hotel Co. v. Pennsylvania Public Utility Commission,* 166 Pa.Superior Ct. 394, 71 A.2d 853 (1950) (addressing the prior version of Section 701 found in the Public Utility Law of May 28, 1937, P.L. 1053, *as amended,* 66 P.S. § 1391, repealed by Act of July 1, 1978, P.L. 598). In the present case, the ALJ found that the record in the proceeding established that Blue & White had a direct economic interest in the service provided by Waddington as evidenced by the fact that Blue & White made a competitive bid on the October 26, 1991 charter trip for which Waddington was observed operating her business in conjunction with Fullington. Coupled with the plain language of Section 701, this evidence leads us to the conclusion that the ALJ properly determined that Blue & White falls within the purview of the statute and may complain about Waddington's unfair and destructive trade practices.

■ Clearly, Blue & White's certificate does not guarantee it protection from competition. Nevertheless, it does provide Blue & White with the assurance that the Commission will, with the assistance of concerned public utilities, monitor the industry in an attempt to prevent such practices. This policy is succinctly set forth in Section 2501(a) of the Code.[8]

■ Waddington also contends that the services she provided in conjunction with Fullington were neither improper nor unauthorized. She characterizes her association with Fullington as a joint venture rather than a brokerage affiliation. Waddington argues that the definition of broker found at Section 2501(b) of the Code clearly excludes persons or corporations who are acting as an agent of another motor carrier or who act jointly or by arrangement with another motor carrier. By operating jointly with Fullington, and using Fullington's authority in conjunction with her own, Waddington argues that neither she, nor Fullington, have exceeded the authority granted to them by the Commission.

We do not agree. In his decision, the ALJ highlighted a variety of factors which led him to conclude that Waddington acted as an unlicensed broker. The ALJ found that Waddington's activities included advertising tours and arranging transportation, meals, admission tickets and lodging for points originating outside the scope of her certificate going to points in Pennsylvania and returning to points outside her certificated areas. Moreover, the ALJ noted that all of Waddington's advertisements promoted Waddington Tours and emphasized that if

---

7. In reviewing a PUC order this Court must determine whether the findings, order, or determination are supported by substantial evidence, an error of law was committed, or constitutional rights were violated. *Keystone Water Co. v. Pennsylvania Public Utility Commission,* 100 Pa. Cmwlth. 644, 515 A.2d 367 (1986).

8. Section 2501(a) of the Code states in part:
It is hereby declared to be the policy of the General Assembly to regulate in this part the service of common carriers by motor vehicle

and forwarders in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in such service, and among such carriers and forwarders in the public interest; to promote safe, adequate, economical, and efficient service by common carriers by motor vehicle and forwarders, and just and reasonable rates therefor, without unjust discrimination, and unfair or destructive practices; ....

Waddington was in fact Fullington's agent, then her advertisements should have promoted *Fullington,* not Waddington.

Based on our review of the record, we conclude that substantial evidence supports the ALJ's determination that Waddington arranged and performed transportation services without the requisite broker's license.

Accordingly, the order of the Commission is affirmed.

## ORDER

NOW, December 29, 1995, the order of the Pennsylvania Public Utility Commission is affirmed.