The MUNICIPAL AUTHORITY OF
the BOROUGH OF WEST
VIEW, Petitioner

v.

PUBLIC UTILITY COMMISSION,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 2011.

Decided March 22, 2012.

Fred E. Baxter, Jr., Pittsburgh, for petitioner.

Stanley E. Brown, Assistant Counsel, Harrisburg, for respondent.

Anthony C. DeCusatis, Philadelphia, for intervenor Pennsylvania American Water Company.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and BROBSON, Judge, and COVEY, Judge.

OPINION BY Judge BROBSON.[1]

The Municipal Authority of the Borough of West View (Authority) petitions this Court for review of the July 15, 2010 Opinion and Order of the Pennsylvania Public Utility Commission (PUC), which denied,

---

1. The majority opinion was reassigned to the authoring judge on February 14, 2012. Judge Covey is substituting for Judge Butler and is considering the case on briefs.

*inter alia*, the Authority's exceptions to the Initial Decision of an Administrative Law Judge (ALJ) and adopted the ALJ's Initial Decision. In so doing, the PUC dismissed the Authority's complaint, in which the Authority challenged the rate that Pennsylvania American Water Company (PAWC), a PUC-regulated utility, used to acquire new business from the Evans City Water and Sewer Authority (Evans City). The PUC, however, also ruled on the merits of the Authority's complaint, granting judgment on the pleadings in favor of PAWC. For the reasons that follow, we will affirm the portion of the PUC's Order that denied the Authority's exceptions and dismissed the Authority's complaint for lack of standing. As a consequence, we vacate the portion of the PUC's Opinion and Order that granted PAWC's motion for judgment on the pleadings.

### BACKGROUND [2]

Faced with a directive by the Pennsylvania Department of Environmental Protection (DEP) to upgrade its own water treatment plant to meet current drinking water requirements, Evans City issued a request for proposals (RFP) to purchase treated water from a third-party supplier as an alternative to upgrading its treatment plant. Three entities submitted proposals: (1) PAWC; (2) Cranberry Township; and (3) the Municipal Authority of Adams Township (Adams Township). In its proposal, PAWC indicated that it would propose a rate in accordance with its PUC-approved Tariff Rider Demand–Based Resale Service, or "Rider DRS." Based on the Rider DRS, PAWC offered two alternative rates: (a) $2.85 per thousand gallons, if PAWC was required to make capital improvements at a cost to PAWC of $320,000; or (b) $2.60 per thousand gallons, if Evans City installed a meter pit at a cost to Evans City of $120,000. Both alternative rates were less than the rates proposed by Cranberry Township ($3.85 per thousand gallons) and Adams Township ($4.25 per thousand gallons). The Authority contends that the rates PAWC proposed are far lower than the per thousand gallon rate that PAWC should have quoted ($7.89).

Evans City selected PAWC as its water provider.[3] On January 15, 2010, the Authority filed a complaint with the PUC, challenging the proposed agreement between Evans City and PAWC. The gravamen of the Authority's complaint is that PAWC improperly used Rider DRS to acquire a new customer, Evans City, when, according to the Authority, Rider DRS can only be used with respect to services provided to existing customers of PAWC.

On February 12, 2010, PAWC filed its answer to the complaint. That same day, PAWC also filed a single document styled as "motions" to dismiss the complaint for lack of standing and/or for judgment on the pleadings. The Authority filed responsive papers on March 1, 2010, and April 12, 2010. The PUC assigned PAWC's motions

---

**2.** The issues on appeal are solely issues of law. Accordingly, the material facts are not in dispute.

**3.** In its brief on appeal, the PUC contends that Evans City sought the proposals only as an "alternative" to upgrading its own treatment plant, suggesting strongly that Evans City has not yet decided whether to purchase its water from PAWC or to proceed with the required upgrades to its plant. Accordingly,

the PUC contends that any claim of harm by the Authority is too speculative and remote to confer standing. Because the record before us does not include any evidence or findings as to Evans City's current water source—*i.e.*, whether it in fact entered into a contract with PAWC or chose, instead, to upgrade its own plant and continue to serve as its own water supplier—we will not consider this argument.

to the ALJ for an initial decision. With respect to standing, the ALJ concluded that the Authority lacked standing because: (1) it did not allege an immediate interest in the litigation, asserting only the interests of bidders Cranberry Township and Adams Township; and (2) it does not participate in a regulatory scheme that prohibits the competitive injury alleged. With respect to judgment on the pleadings, the ALJ held that "[t]he question of the permissibility of PAWC using [Rider DRS] to compete for and acquire a new water service customer has been settled. It is permissible." (ALJ Initial Decision at 8.) In support of his ruling on the merits, the ALJ cited prior PUC decisions on the subject, including a PUC decision that this Court affirmed in an unreported memorandum opinion. *See Municipal Auth. of the Twp. of Robinson v. Pa. Pub. Util. Comm'n,* No. 2008 C.D.2004 (Pa. Cmwlth. July 15, 2005) (*MATR*).[4]

█ The Authority filed exceptions to the ALJ's Initial Decision, and PAWC filed reply exceptions. In its Opinion and Order, the PUC denied all exceptions. In so doing, the PUC specifically addressed and rejected the Authority's exceptions to the ALJ's standing and merits decisions. The PUC adopted the ALJ's Initial Decision to the extent it is consistent with the PUC's Opinion and Order. This appeal followed.[5]

The Authority raises the following issues for our consideration, which we will reorder and rephrase for purposes of our analysis: (1) did the PUC err in concluding that the Authority lacks standing in this matter; (2) if the PUC did not so err, has the Authority been deprived of procedural due process; and (3) is the Authority limited by law to charging municipalities reasonable and uniform rates based on the cost of service, such that it lacks the ability to offer *lower* rates to entice new customers. With respect to the third issue, the Authority contends that the uniform rate requirement prevents the Authority from using the rates it charges to existing clients to subsidize lower rates to entice new customers. It contends that by granting judgment on the pleadings in this case, the PUC, in effect, has improperly allowed PAWC to engage in this very practice. Although the PUC does not appear to address this argument in its Opinion and Order, we will treat the argument as a legal challenge to the PUC's decision to enter judgment on the pleadings in favor of PAWC.[6]

### DISCUSSION

### Standing

█ In support of its challenge to the PUC's standing decision, the Authority

---

**4.** The parties' citation to and PAWC's reliance on *MATR*, an unreported panel decision of this Court issued prior to January 15, 2008, would ordinarily be prohibited by Section 414 of this Court's Internal Operating Procedures. By order dated December 2, 2010, however, this Court granted PAWC permission to cite and rely upon *MATR* for purposes of this appeal, based on the PUC's discussion of and reliance upon *MATR* in the Opinion now on appeal to this Court. We note, however, that the Court's December 2, 2010 Order does not alter the character of *MATR*. It remains an unreported panel decision of this Court issued prior to January 15, 2008, and, thus, is not

binding precedent from this Court on the issues addressed therein.

**5.** Our standard of review of a PUC order is limited to determining whether there was a constitutional violation, an error of law, or a violation of PUC procedure. We also must determine whether the PUC's findings are supported by substantial evidence. *Rohrbaugh v. Pa. Pub. Util. Comm'n,* 556 Pa. 199, 727 A.2d 1080 (1999).

**6.** The Pennsylvania Municipal Authorities Association has submitted a brief *amicus curiae* in support of the Authority's appeal.

notes that while it did not submit its own bid to Evans City in response to the RFP, Cranberry Township and Adams Township did submit bids. Both Cranberry Township and Adams Township purchase all of their water, by contract, from the Authority. Evans City, however, selected PAWC as its water supplier over Cranberry Township and Adams Township. According to the Authority, this selection meant that the Authority missed out on additional revenue under its contracts with the townships because, had Evans City selected one of the townships over PAWC, the selected township would have had to draw greater amounts of water from the Authority to satisfy the added demand. The Authority contends that these facts satisfy the test for standing to challenge PAWC's use of Rider DRS to win Evans City's business.

■ Section 701 of the Public Utility Code (Code) provides, in pertinent part:

[A]ny person, corporation, or municipal corporation having an interest in the subject matter, or any public utility concerned, may complain in writing, setting forth any act or thing done or omitted to be done by any public utility in violation, or claimed violation, of any law which the [PUC] has jurisdiction to administer, or of any regulation or order of the [PUC].

66 Pa.C.S. § 701. In order to have standing to pursue a formal complaint before the PUC under Section 701 of the Code, the complainant "must have a *direct, immediate, and substantial* interest in the subject matter of the controversy." *Waddington v. Pennsylvania Pub. Util. Comm'n*, 670 A.2d 199, 202 (Pa.Cmwlth. 1995) (emphasis added), *appeal denied*, 544 Pa. 679, 678 A.2d 368 (1996). "The requirement that an interest be 'direct' simply means that the person claiming to be aggrieved must show causation of the harm to *his* interest by the matter of

which he complains." *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 195, 346 A.2d 269, 282 (1975) (plurality) (emphasis added). The requirement that an interest be "immediate" and not a remote consequence of the matter concerns "the nature of the causal connection between the action complained of and the injury to the person challenging it." *Id.* at 197, 346 A.2d at 283. The requirement of a "substantial" interest means that the interest must have substance—*i.e.*, there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law. *Id.* at 195, 346 A.2d at 282.

■ In its Opinion and Order, the PUC focused on the immediacy prong of the standing inquiry. It noted that the Authority's claim of injury arising from PAWC's use of Rider DRS to respond to the Evans City RFP was competitive in nature, yet the Authority did not even respond to the RFP. Consequently, it did not compete with PAWC for Evans City's business. The PUC further noted that the two unsuccessful offeror's—Adams Township and Cranberry Township—did not file a complaint with the PUC or otherwise challenge PAWC's proposal. Based on these uncontested facts, the PUC concluded that the Authority's lost opportunity of increased business from either Cranberry Township or Adams Township if either of them had been selected by Evans City over PAWC was too remote a consequence of PAWC's use of its Rider DRS to confer standing on the Authority to challenge the result of the Evans City RFP.

We agree. Here, the immediate consequence of PAWC's use of its Rider DRS was Evans City's selection of PAWC over Cranberry Township and Adams Township. A more remote consequence was the Authority's loss of potential additional

business with either Cranberry Township or Adams Township. This loss—akin to a wholesaler's loss when its retail customer loses a contract—is one step too far removed from the impact of PAWC's conduct to meet the immediacy requirement for standing. Inasmuch as the Authority's loss of potential additional business was not an immediate consequence of PAWC's use of its Rider DRS, the PUC did not err in concluding that the Authority lacked standing in this case.

■ Alternatively, even if the Authority's interest could be characterized as an immediate consequence of PAWC's use of Rider DRS in response to the Evans City RFP, that interest is only indirectly, rather than directly, impacted by PAWC's conduct.[7] As the PUC appropriately noted, the Authority did not respond to the Evans City RFP. Accordingly, it cannot be said to have been "directly" impacted by Evans City's decision to select PAWC over Cranberry Township and Adams Township. At best, the Authority's status as a supplier of water to two unsuccessful offerors (Cranberry Township and Adams Township) gave the Authority an "indirect" interest in the process by which Evans City selected its water supplier. An indirect interest is not a sufficient interest to confer standing.

This is not to say that the Authority, as a matter of law, could never have standing to file a complaint with the PUC under Section 701 of the Code, alleging that PAWC used Rider DRS unlawfully to attract new customers. In MATR, for example, a municipal authority filed a complaint with the PUC, challenging PAWC's

use of Rider DRS to succeed the municipal authority as the principal water source for an existing client of the municipal authority. Neither the PUC nor this Court in its affirming decision addressed the municipal authority's standing to pursue that challenge by complaint before the PUC. Nonetheless, the fact that the municipal authority in MATR actually lost a client due to the challenged actions of PAWC in that case distinguishes it from the Authority in this case and illustrates the type of direct and immediate interest that we would consider sufficient to confer standing to pursue the challenge that the Authority attempted to pursue before the PUC in this matter.

■ Finally, the Authority challenges the PUC's conclusion that the Authority's asserted interest also fails to satisfy the "substantial" interest prong of the standing inquiry, based on this Court's decision in *Pennsylvania Petroleum Association v. Pennsylvania Power & Light Co.*, 32 Pa. Cmwlth. 19, 377 A.2d 1270 (1977) (en banc) (*Pa. Petroleum*), aff'd, 488 Pa. 308, 412 A.2d 522 (1980). Our decision in *Pa. Petroleum* addressed the sufficiency of the interest of a trade association comprised of competitors of an electric utility to confer standing on the trade association to challenge the electric utility's request for rate approvals from the PUC under the Code. In that case, we noted: "Our review of the case law concerning the standing of parties alleging competitive injury ... leads us to conclude that such parties have standing only where the alleged competition is prohibited by a regulatory scheme *in which both parties participate*." *Pa. Petroleum*, 377 A.2d at 1273 (emphasis added). Ap-

---

7. It is well settled that this Court may affirm for any reason and is not limited to grounds raised by the parties. *McAdoo Borough v. Pa. Labor Relations Bd.*, 506 Pa. 422, 485 A.2d 761 (1984) (citing *Commonwealth v. Meyer*, 488 Pa. 297, 412 A.2d 517 (1980)); *Common-* *wealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975); *Gilbert v. Korvette, Inc.*, 457 Pa. 602, 327 A.2d 94 (1974); *Prynn's Estate*, 455 Pa. 192, 315 A.2d 265 (1974); *Appeal of Kit–Mar Builders, Inc.*, 439 Pa. 466, 268 A.2d 765 (1970).

plying this principle, we held that such an interest was not sufficient to confer standing because the regulatory scheme at issue did not prohibit competition. *Pa. Petroleum*, 377 A.2d at 1273.

Applying *Pa. Petroleum*, the PUC held that because the Authority is not regulated by the PUC, it does not participate in the same regulatory scheme as PAWC. Thus, the PUC concluded that the Authority's alleged competitive injury did not rise to a "substantial" interest for purposes of standing. We agree with the Authority that the PUC incorrectly applied our holding in *Pa. Petroleum* in this case. Our decision in *Pa. Petroleum* addressed a circumstance where an entity attempted to interject itself into a regulatory scheme in an effort to avoid a result that might prove injurious to its competitive interests. Our decision in that case stands for the proposition that such an effort is only appropriate where (a) the competitor participates (*i.e.*, is subject to) the same regulatory scheme and (b) the regulatory scheme prohibits competition or somehow takes competitive injury into account. The cases we cited in *Pa. Petroleum* illustrate the analysis:

In *Delaware County National Bank v. Campbell*, 378 Pa. 311, 106 A.2d 416 (1954), a bank was found to have standing to challenge a merger between two other banks *because the statutory scheme regulating banks prohibited competition which threatened the financial stability of such institutions.* Likewise, in *Franklin Federal Savings and Loan Ass'n v. Patterson*, 421 Pa. 409, 218 A.2d 724 (1966), a savings and loan association had standing to challenge the establishment of a competing savings and loan association nearby *since excessive competition was prohibited by the state banking code. Cf. Ritter Finance Co. v. Myers*, 401 Pa. 457 [467], 165 A.2d 246 (1960), in which a loan company did

not have standing to challenge the granting of a license to a nearby competitor *because the law regulating small loan companies was not concerned with competition between such companies.*

*Id.* (emphasis added).

In light of the foregoing, an examination of the Authority's standing under *Pa. Petroleum* would be appropriate if, for example, this case involved a complaint by the Authority, opposing a PAWC rate application. But this matter does not directly implicate the PUC rate review and approval process, or any other regulatory scheme for that matter. Unlike the trade association in *Pa. Petroleum*, the Authority here did not seek to interject itself in a regulatory process in an effort to influence the outcome. To the contrary, the Authority, not PAWC, initiated the administrative proceeding below by filing a complaint under Section 701 of the Code. The complaint does not purport to oppose or challenge regulatory action favorable to PAWC. Instead, we read the complaint as a request by the Authority to examine PAWC's conduct in the marketplace to determine whether that conduct is in conflict with the rate structure that the PUC has approved for PAWC. We do not believe that our holding in *Pa. Petroleum* extends to complaints of this nature before the PUC.

Although we conclude that the PUC inappropriately applied *Pa. Petroleum* in this matter, for the reasons set forth above, the PUC appropriately dismissed the Authority's complaint for lack of standing.

### Procedural Due Process

■ The Authority argues that the PUC's standing decision, particularly the PUC's reliance on *Pa. Petroleum*, deprives the Authority, and similarly-situated municipal authorities, the opportunity to chal-

lenge the practices of regulated utilities before the PUC. By dismissing the Authority's complaint, the Authority argues that it has been denied a basic element of procedural due process—*i.e.*, the opportunity to be heard.

We have noted that the right to procedural due process only attaches where there is an alleged deprivation of a protected property or liberty interest. *See Davenport v. Reed,* 785 A.2d 1058, 1062 (Pa.Cmwlth.2001). In its brief, the Authority does not specifically argue how the PUC's decision to dismiss the Authority's Complaint for lack of standing deprived the Authority of protected property or liberty interest. The Authority suggests, however, that it has a protected property interest in competing with PUC-regulated water utilities based on a rate that reflects the utility's cost of service. Our Supreme Court held in *Pennsylvania Petroleum Association v. Pennsylvania Power & Light Company,* 488 Pa. 308, 412 A.2d 522 (1980) (*Pa. Petroleum II* ), however, that the seller of a competing product cannot force a utility to raise its rates merely because the lower rates are detrimental to the seller's competitive position. Our Supreme Court explained that the "protection of such an interest is not an objective of the regulatory scheme." *Pa. Petroleum II,* 488 Pa. at 311, 412 A.2d at 524.

In light of the foregoing, we cannot conclude that the Authority has a protected property interest in competing with PUC-regulated water utilities on a particular rate basis. Accordingly, because the Authority fails to identify a valid and constitutionally-protected property or liberty interest, we reject the Authority's procedural due process argument.

## The Merits

■■■ The Authority initiated the administrative proceeding below by filing a complaint under Section 701 of the Code. The PUC's regulations authorize the PUC to resolve complaints through the filing of motions for judgment *on the pleadings.* *See* 52 Pa.Code § 5.102. Upon dismissal of the complaint for lack of standing, there was no longer a complaint (*i.e.*, a case or controversy) before the PUC under Section 701. Consequently, there were no longer any pleadings before the PUC upon which it could enter judgment on the pleadings. In short, by granting the motion to dismiss, the PUC divested itself of its jurisdiction under Section 701 of the Code to resolve the merits of the Authority's complaint and PAWC's defenses thereto. *See Bldg. Indus. Ass'n of Lancaster Cnty. v. Manheim Twp.,* 710 A.2d 141, 147 (Pa.Cmwlth.1998) ("[W]hen Common Pleas determined that BIA lacked standing and the case was time barred, it no longer possessed jurisdiction over the case to address any of the merits."). The existence of a case or controversy is a jurisdictional issue that may be raised by this Court *sua sponte. See Rendell v. Pa. State Ethics Comm'n,* 603 Pa. 292, 312 n. 2, 983 A.2d 708, 720 n. 2 (2009) (Greenspan, J., concurring).

Notwithstanding the PUC's decision to dismiss the Authority's complaint for lack of standing, the PUC adjudicated the merits of the complaint by granting PAWC's motion for judgment on the pleadings.[8] Because we affirm the PUC's dismissal of the complaint for lack of standing, we vacate the grant of judgment on the pleadings in favor of PAWC. As explained above, once the PUC granted the motion

---

**8.** We do not fault the PUC for doing so. Indeed, because the PUC could not predict with certainty how this Court might rule on the question of the Authority's standing, it was prudent for the PUC to also rule on the motion for judgment on the pleadings.

to dismiss for lack of standing, it no longer had jurisdiction to rule on the merits.

### ORDER

AND NOW, this 22nd day of March, 2012, the order of the Pennsylvania Public Utility Commission (PUC), dated July 16, 2010, denying the exceptions of Petitioner Municipal Authority of the Borough of West View (Authority) and adopting the Administrative Law Judge's Initial Decision is AFFIRMED in part and VACATED in part. The PUC's order is AFFIRMED to the extent that it dismissed the Authority's complaint because the Authority lacked standing, and the PUC's order is VACATED to the extent that it granted judgment on the pleadings in favor of Pennsylvania American Water Company.