Richard C. Culbertson,                    :
                  Petitioner                :
                                     :
               v.                        :
                                       :
Pennsylvania Public Utility               :
Commission,                               :   No. 506 C.D. 2023
                  Respondent                :   Submitted: July 5, 2024


BEFORE:   HONORABLE ANNE E. COVEY, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED:  August 27, 2024

Richard C. Culbertson (Petitioner) petitions this Court for review (Review Petition) of the Pennsylvania Public Utility Commission's (Commission) April 20, 2023 order (April 2023 Order) granting Columbia Gas of Pennsylvania, Inc.'s (Columbia) Petition for Approval of its Third Long-Term Infrastructure Improvement Plan (LTIIP) (Third LTIIP Petition), wherein the Commission approved Columbia's third LTIIP (Third LTIIP).  Petitioner presents two issues for this Court's review: (1) whether the Commission denied Petitioner and others due process; and (2) whether the Commission failed to exercise due diligence when considering and granting the Third LTIIP Petition.

Also before this Court is the Commission's Application for Relief in the Nature of a Motion to Dismiss the Review Petition (Application)[1] for the

---

[1] Therein, the Commission also requested a stay of the briefing schedule pending the Application's disposition.  By August 17, 2023 Order, this Court stayed the briefing schedule

following reasons: (1) Petitioner lacks standing to challenge the Commission's April 2023 Order because Petitioner was not aggrieved by that order; (2) Petitioner asks this Court to issue an advisory opinion with respect to the April 2023 Order, which is beyond this Court's jurisdiction; (3) Petitioner is improperly attempting to enforce the due process rights of other individuals; and (4) Petitioner waived any challenges to the April 2023 Order based on claims that Columbia's Third LTIIP did not comply with the Public Utility Code[2] (Code) and related Commission Regulations, and that the Commission acted arbitrarily and capriciously in granting the Third LTIIP Petition. After review, this Court grants the Commission's Application and dismisses the Review Petition.

## Background

Pursuant to Act 11 of 2012[3] (Act 11), jurisdictional water and wastewater utilities, electric distribution companies, and natural gas distribution companies, or a city natural gas distribution operation, may implement a Distribution System Improvement Charge (DSIC) to recover reasonable and prudent costs incurred to repair, improve, or replace certain eligible distribution property[4] that is part of the utility's distribution system. Act 11 states that as a precondition to DSIC implementation, a utility must file an LTIIP with the Commission consistent with Section 1352 of the Code, 66 Pa.C.S. § 1352.[5]

---

pending consideration of the Application. By August 30, 2023 Order, this Court lifted the stay and directed the parties to address both the Review Petition and the Application in their briefs on the merits. Notably, Petitioner's brief does not address the Application.

[2] 66 Pa.C.S. §§ 101-3316.

[3] The Act of Feb. 14, 2012, P.L. 72, No. 11, effective April 16, 2012, amended Chapters 3, 13, and 33 of the Code.

[4] Section 1351 of the Code, 66 Pa.C.S. § 1351, defines *eligible property*.

[5] Section 1352 of the Code states:

2

In accordance with Section 121.3(a) of the Commission's DSIC Regulations, DSIC-eligible utilities must include the following elements in their LTIIPs: (1) type and age of eligible property; (2) schedule for planned repair and replacement; (3) location of the eligible property; (4) reasonable quantity estimates of the property to be improved; (5) projected annual expenditures and measures to ensure a cost effective plan; (6) manner of accelerating replacement of aging

(a) **Submission**. — In order to be eligible to recover costs under [S]ection 1353 [of the Code] (relating to [DSIC]), a utility must submit a[n] [LTIIP]. The plan shall include the following:

(1) Identification of the types and age of eligible property owned or operated by the utility for which the utility would seek recovery under this subchapter.

(2) An initial schedule for the planned repair and replacement of eligible property.

(3) A general description of the location of the eligible property.

(4) A reasonable estimate of the quantity of eligible property to be improved.

(5) Projected annual expenditures to implement the plan and measures taken to ensure that the plan is cost effective.

(6) The manner in which the replacement of aging infrastructure will be accelerated and how the repair, improvement[,] or replacement will ensure and maintain adequate, efficient, safe, reliable[,] and reasonable service.

(7) If the plan is not adequate and sufficient to ensure and maintain adequate, efficient, safe, reliable[,] and reasonable service, the [C]ommission shall order a new or revised plan.

(b) **Periodic review**.

(1) The [C]ommission shall promulgate regulations for the periodic review at least once every five years of long-term infrastructure plans. The regulations may authorize a utility to revise, update[,] or resubmit a plan as appropriate.

(2) The regulations shall ensure that a [DSIC] shall terminate if the [C]ommission determines that the utility is not in compliance with the approved plan.

66 Pa.C.S. § 1352.

3

infrastructure, and how repair, improvement, or replacement will maintain safe and reliable service; (7) a workforce management and training program; and (8) a description of outreach and coordination activities with other utilities, the Pennsylvania Department of Transportation, and local governments on planned maintenance/construction projects. *See* 52 Pa. Code § 121.3(a).

On December 7, 2012, Columbia filed its first LTIIP petition (First LTIIP Petition), a 5-year plan with projected capital spending at $656.5 million.[6] The Commission granted the First LTIIP Petition on March 14, 2013. On May 5, 2017, Columbia jointly filed a petition to modify its First LTIIP Petition, and a petition for a second LTIIP (Second LTIIP Petition), proposing an increase in investment from $116.9 million to $230 million in 2017. Columbia's Second LTIIP Petition proposed $1.36 billion in spending over 5 years, which was a 107% increase over the First LTIIP Petition's proposed spending. On September 21, 2017, the Commission approved Columbia's proposed modification to its First LTIIP Petition, and approved Columbia's Second LTIIP Petition.

On December 28, 2022, Columbia filed the Third LTIIP Petition, seeking approval of its Third LTIIP, a five-year plan covering 2023 through 2027. While Columbia's First and Second LTIIP Petitions focused primarily on replacing cast iron, bare steel, and wrought iron mains, in its Third LTIIP Petition, Columbia represented to the Commission that risks beyond bare steel and wrought iron also

---

[6] The Commission observed:

> Columbia, as a[ natural gas distribution company], provides natural gas service to approximately 440,000 residential, commercial, and industrial customers in portions of 26 counties throughout its greater York and Western Pennsylvania service territories. Columbia provides service through approximately 7,700 miles of mains and 425,038 services that it owns, operates[,] and maintains.

April 2023 Order at 5.

needed to be addressed. Thus, in the Third LTIIP Petition, Columbia explained it plans to address risks with coated steel segments that were installed before 1971, as it has found that many such pipe sections were ineffectively coated. According to Columbia, as the coating becomes ineffective over time, the pipe segments demonstrate the same leakage characteristics of bare steel pipe. Columbia further informed the Commission that it would focus on addressing risks associated with first-generation, or pre-1982, plastic pipe found to be susceptible to brittle-like cracking and posing potential safety hazards and reliability risks. According to Columbia, first-generation plastic failures are difficult to predict, as they do not always exhibit a leak history before they fail.

On January 19, 2023, Petitioner filed comments regarding the Third LTIIP Petition. *See* Reproduced Record at 33.[7] Therein, Petitioner alleged that Columbia's Third LTIIP did not comply with the Code and Regulation requirements, that the Third LTIIP's approval will not lead to just and reasonable rates, and said approval would diminish private property rights. On January 27, 2023, the Commission's Bureau of Investigation & Enforcement (BIE) filed comments, contending that Columbia's Distribution Integrity Management Plan has consistently identified bare steel pipes as the riskiest segments on Columbia's system and that deviation from Columbia's previously established bare steel replacement rates and projections was not justified. On January 29, 2023, Petitioner

---

[7] Pennsylvania Rule of Appellate Procedure 2173 requires a reproduced record to "be numbered . . . in Arabic figures . . . followed in the reproduced record by a small a, thus 1a, 2a, 3a, *etc.*, and followed in any supplemental reproduced record by a small b, thus 1b, 2b, 3b, *etc.*" Pa.R.A.P. 2173. Petitioner did not number the pages of his Reproduced Record, and the Commission incorrectly numbered the pages of its Supplemental Reproduced Record by following the page numbers with a small a. Accordingly, Petitioner's Reproduced Record page numbers herein reflect electronic pagination, and the Commission's Supplemental Reproduced Record page numbers reflect the page number followed by a small a.

filed a reply to BIE's comments. *See* Supplemental Reproduced Record (S.R.R.) at 240a.

On April 20, 2023, the Commission issued the April 2023 Order granting the Third LTIIP Petition. On May 11, 2023, Petitioner filed with the Commission a motion for reconsideration of its April 2023 Order. On May 16, 2023, the Commission rejected the motion for reconsideration as untimely. *See* S.R.R. at 1a. Petitioner appealed to this Court.[8]

## Commission's Application

Preliminarily, this Court must consider the Commission's Application. The Commission first contends that Petitioner does not have standing to bring this appeal because he has not demonstrated a substantial, direct, and immediate harm and, thus, is not aggrieved by the Commission's April 2023 Order. The Commission reasons:

> [T]he Commission's approval of . . . the . . . [Third] LTIIP constitutes approval of Columbia['s] *plan* for repairing and replacing eligible distributions system infrastructure for the benefit of all customers. It does not place any burden on [Petitioner]. In fact, it does not require [Petitioner] to do anything at all.

Application at 6.

Section 702 of the Administrative Agency Law declares that "[a]ny person aggrieved by an adjudication of a Commonwealth agency who has a direct

---

[8] "This Court's review of a [Commission] adjudication determines 'whether constitutional rights have been violated, an error of law has been committed, or the Commission's findings and conclusions are, or are not, supported by substantial evidence.' *Barasch v.* [*Pa.*] *Pub*[.] *Util*[.] *Comm*[*'n*], 493 A.2d 653, 655 ([Pa.] 1985)." *Schmukler v. Pa. Pub. Util. Comm'n*, 302 A.3d 247, 250 n.6 (Pa. Cmwlth. 2023) (quoting *Twin Lakes Utils., Inc. v. Pa. Pub. Util. Comm'n*, 281 A.3d 384, 389 n.5 (Pa. Cmwlth. 2022)).

interest in such adjudication shall have the right to appeal therefrom . . . ." 2 Pa.C.S. § 702.

> To have standing . . . , the [party] must be aggrieved. A [party] can demonstrate that he is aggrieved if he can establish that he has a "*direct*, *immediate*, *and substantial* interest in the subject matter of the controversy." *Mun*[.] *Auth*[.] *Borough of W*[.] *View v. Pub*[.] *Util*[.] *Comm*[*'n*], 41 A.3d 929, 933 (Pa. Cmwlth. 2012) (citation omitted) (emphasis in original). Our Supreme Court explained, in the seminal case *William Penn Parking Garage, Inc. v. City of Pittsburgh*, . . . 346 A.2d 269, 283 ([Pa.] 1975) (plurality), that standing requires the complaining party to show a "harm to his interest," and the harm must be neither remote nor speculative. In addition, the complaining party must show "some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law." *Id*. at 282.
>
> Stated simply, standing requires the complainant to be "negatively impacted in some real and direct fashion." *Markham v. Wolf*, . . . 136 A.3d 134, 140 ([Pa.] 2016) (quoting *Pittsburgh Palisades Park, LLC v. Commonwealth*, . . . 888 A.2d 655, 660 ([Pa.] 2005)).

*Sunoco Pipeline L.P. v. Dinniman*, 217 A.3d 1283, 1287-88 (Pa. Cmwlth. 2019).

> Further,
>
> [m]ere allegations of speculative future harm are insufficient to establish standing. *See Ams. for Fair Treatment, Inc. v. Phila. Fed'n of Teachers*, 150 A.3d 528, 536 (Pa. Cmwlth. 2016) ("The mere possibility that future events might occur that could [affect the appellants] . . . is not sufficient to establish the direct and immediate interest required for standing.").

*Gates v. City of Pittsburgh Historic Rev. Comm'n*, 254 A.3d 803, 810 (Pa. Cmwlth. 2021).

Petitioner states that he is "'*aggrieved*' and will be harmed in the future with these huge amounts of accelerated expenditures." Answer to Application at 13.

Further, he complains that, as a landlord, the total cost of his tenants' occupancy will be excessive. The Commission responds that "[Petitioner] does not provide any facts supporting his conclusory statements demonstrating any actual, direct, and immediate harm." Application at 7. To the extent that Petitioner's alleged harm relates to increased rates,[9] the Commission contends that such harm is merely speculative, and that Petitioner will have the opportunity to challenge any proposed future rate increase in DSIC rate proceedings. *See* Sections 1354[10] and 1355[11] of the Code, 66 Pa.C.S. §§ 1354, 1355.

This Court agrees with the Commission. In fact, Columbia is not authorized to increase rates simply as a result of the Commission's April 2023 Order. Any resulting rate change could only occur following DSIC rate proceedings, during

---

[9] Notably, here, it is not clear that Petitioner is even presently Columbia's customer. In his Answer to the Application, Petitioner averred:

> [Petitioner] is a residential real estate investor and now has four properties serviced by Columbia . . . .
>
> [] [Petitioner] is "aggrieved" and **will be harmed in the future** with these huge amounts of accelerated expenditures. **Anytime any of those properties are vacant**, **he is a customer** and will be paying Columbia's increased distribution rates and charges. Secondly and most importantly, **as a landlord**, the total cost of occupancy by those leasing the property is excessive in comparison to Peoples Gas.

Answer to Application at 12-13 (emphasis added). Thus, it appears that Petitioner acknowledges that he will become a Columbia customer only if his properties become vacant.

[10] Section 1354 of the Code provides, in pertinent part: "Utilities shall provide notice to customers in bill inserts or through other means as prescribed by the [C]ommission of the following: (1) Submission of the proposed [DSIC] and initial tariff." 66 Pa.C.S. § 1354.

[11] Section 1355 of the Code states:

> Following the filing of a petition in compliance with [S]ection 1353 [of the Code] (relating to [DSIC]), the [C]ommission shall, after notice and opportunity to be heard, approve, modify or reject the [DSIC] and initial tariff. The [C]ommission shall hold evidentiary and public input hearings as necessary to review the petition.

66 Pa.C.S. § 1355.

which Petitioner can participate and voice any relevant objections. Apart from the possible impacts on his investment properties resulting from possible rate increases constituting speculative harm, Petitioner identifies no other harm to himself beyond claims amounting to "the abstract interest of all citizens in having others comply with the law." *Sunoco Pipeline*, 217 A.3d at 1288 (quoting *William Penn Parking Garage*, 346 A.2d at 282). Thus, aside from the *possibility* of the aforementioned rate increase - a speculative concern - Petitioner does not show how he is impacted by the Commission's decision in "some real and direct fashion." *Sunoco Pipeline*, 217 A.3d at 1288 (quoting *Markham*, 136 A.3d at 140). Accordingly, Petitioner lacks standing to appeal.[12]

For all of the above reasons, this Court grants the Commission's Application and dismisses Petitioner's Review Petition.


_____
ANNE E. COVEY, Judge


Judge Fizzano Cannon did not participate in the decision in this matter.

---

[12] Given this Court's conclusion that Petitioner lacks standing, this Court does not reach the parties' other issues.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard C. Culbertson, :
               Petitioner :
                :
        v. :
                :
Pennsylvania Public Utility :
Commission, : No. 506 C.D. 2023
             Respondent :

### O R D E R

AND NOW, this 27th day of August, 2024, this Court grants the Pennsylvania Public Utility Commission's Application for Relief in the Nature of a Motion to Dismiss Richard C. Culbertson's (Petitioner) Petition for Review (Review Petition) and dismisses Petitioner's Review Petition.

_____
ANNE E. COVEY, Judge